(January 5, 1899.)

# WILSON v. BOISE CITY.

. [55 Pac. 887.]

DIVERTING WATER OF A NATURAL STREAM—LIABILITY OF CITY.—The waters of a natural stream flowed through the city, crossing ten streets therein, and, during high waters, flooded the streets, injuring them to the damage of the city. To avoid such injury, the city constructed an artificial canal, and diverted the waters of said stream therein; the canal was not of size sufficient to convey the waters of said stream, and overflowed and injured plaintiff's lands. *Held,* that the city was liable to plaintiff in damages, in being beneficially interested in the change of the course of a natural stream, and negligent in not constructing the canal of size sufficient to carry the waters of said stream at all times and in quantities that might be reasonably anticipated.

GRANT OF POWER—AUTHORITY.—A grant of power carries with it authority to do those things necessary to the exercise of the power granted.

ARTIFICIAL WATERWAY—MUST BE KEPT IN REPAIR BY PARTY CONSTRUCTING IT.—One who purchases land and improves the same on the line of an artificial waterway constructed by a municipal corporation may well rely upon such municipal corporation to perform the duty that it is under, of keeping such artificial waterway in repair and condition to carry all of the waters that may flow therein from usual and ordinary causes, and may recover damages received by the negligent flooding of his lands by waters from such artificial waterway.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

C. C. Cavanah, for Appellant

The appellant contends that Boise City, a municipal corporation, derives its powers and authority under and by virtue of a special charter, and that there is no provision therein granting to Boise City or the officers thereof authority, or making it the duty of said city, to construct and maintain this artificial channel. That the acts of the mayor and common council of Boise City in the construction and maintenance of said artificial channel were and are *ultra vires,* null and void. Taking the po-

sition which we are contending for, that the mayor and common council of Boise City were not authorized by law to construct and maintain this artificial channel, the rule is well settled that if an act from which an injury results be wholly beyond the powers conferred on a municipal corporation, the latter cannot be held responsible in damages for the doing of it. In support of this proposition we submit the following authorities: *Collins v. Mayor etc.*, 69 Ga. 544; *Cavanaugh v. Boston*, 139 Mass. 426, 52 Am. Rep. 716, 1 N. E. 834; *Field v. Des Moines*, 39 Iowa, 575, 18 Am. Rep. 46; *Harvey v. Rochester*, 35 Barb. 177; *Smith v. Rochester*, 76 N. Y. 506; *Thayer v. Boston*, 19 Pick. 511, 31 Am. Dec. 157; Dillon on Municipal Corporations, 4th ed., 1181, 1183. A ratification of the unauthorized and illegal acts of the officers or agents of a municipality cannot make the municipality liable. (*Hodges v. Buffalo*, 2 Denio, 110; *Boam v. Utica*, 2 Barb. 104; *William v. Rockland*, 52 Me. 118.) We maintain that it is fundamental that in order to say that a municipal corporation is liable in damages by reason of an act of its officers, the corporation or its officers must be engaged in the performance of a corporate duty devolved by law upon the corporation, and is not liable when engaged in the performance of a public service for the general welfare of the inhabitants of the community. (*Kuehn v. Milwaukee*, 92 Wis. 263, 65 N. W. 1030; *Mayor etc. of Huntsville v. Ewing*, 116 Ala. 576, 22 South. 984; *Mayor of Albany v. Cuncliff*, 2 N. Y. 165.) The universal rule laid down by the courts and text-writers is, that where a municipal corporation or its officers have used reasonable and ordinary care in the construction and maintenance of a public work, the corporation is not responsible for damages caused by freshets and storms. (*Carr v. Northern Liberties*, 35 Pa. St., 324, 78 Am. Dec. 342; *Diamond Match Co. v. New Haven*, 55 Conn. 525, 3 Am. St. Rep. 70, 13 Atl. 409; *Mayor etc. of Huntsville v. Ewing*, 116 Ala. 576, 22 South. 984; *Rockwood v. Wilson*, 11 Cush. 221; *Steinmeyer v. St. Louis*, 3 Mo. App. 256.)

Hawley & Puckett, for Respondents.

The city constructs a sewer system and extends its main drainage line one mile beyond the limits of the city and dumps

the sewage upon the premises of another to his damage. Under the contention of the appellant herein the city would not be liable, as the acts of the mayor and common council would be *ultra vires,* the point of dumping being without the city limits. The authorities all hold that in a case like the above the city would be liable. (*Chapman v. Rochester,* 110 N. Y. 273, 6 Am. St. Rep. 366, 18 N. E. 88, 1 L. R. A. 296, and numerous cases therein cited.) It was the duty of the city when it constructed the new channel to have constructed it of sufficient size to carry off the waters that might reasonably be expected to flow down and into such channel. (*Spangler v. San Francisco,* 84 Cal. 12, 18 Am. St. Rep. 158, 23 Pac. 1091; *Mayor v. Baley,* 2 Denio, 440, 441; *Powers v. Council Bluffs,* 50 Iowa, 197.) If the mayor and common council had the power to construct the new channel, then we contend that there can be no question but what the city is liable in this action. (*Rose v. St. Charles,* 49 Mo. 510; *Imler v. Springfield,* 55 Mo. 126, 17 Am. Rep. 645; *Bams v. Hannibal,* 71 Mo. 449; *Mayor v. Thompson,* 29 Ark. 569; *Flagg v. Worcester,* 13 Gray, 601; *Gaued v. Booth,* 66 N. Y. 62; *Vanderweile v. Taylor,* 65 N. Y. 341.) Good faith and honest exercise of judgment are no defense in an action for damages caused by inadequate artificial waterway. (*Perry v. Worcester,* 6 Gray, 544, 66 Am. Dec. 431, and note.)

Action by plaintiffs to recover damages caused by flooding their lands by waters from an artificial canal constructed by the defendant. Judgment for plaintiffs for $500 and costs of action. A motion for a new trial was denied. Defendant appeals from the order denying a new trial, and from the judgment. On the trial, the following stipulation of facts was made, which constitutes the evidence in the cause, to wit: "The above-named parties hereby agree upon the following statement of facts, and submit the same to the court for the determination of the points in controversy: The facts agreed upon, in addition to the facts admitted in the pleadings, are as follows: That Cottonwood creek is a stream tributary to Boise river, and rises in a range of mountains that extends along the northerly side of Boise City. That the natural channel of said stream enters said limits of Boise City, and runs southwesterly through the

limits of Boise City, a distance of more than one mile. That
the said natural channel of said stream through the limits of
Boise City was, before moving the same, varying feet in width
and in depth. That, at times of high water in said stream, and
of freshets, at the time said stream ran through said city limits
in its natural channel, said waters ran at times outside and over
said natural channel, and upon the land adjoining said natural
channel, and the natural channel was at said times of high
water insufficient to carry the waters of said stream. When the
same ran through Boise City, it crossed ten streets. That, dur-
ing the low-water season of each year, the authorities of Boise
City could have, by making artificial channels along the streets,
controlled the waters of said stream, so as not to have been an
obstruction to said streets, or to have interfered with or pre-
vented the proper cleaning or repairing thereof, but could not,
during seasons of high water, have prevented such water ob-
structing the streets crossed by said stream, or of its interfering
or preventing the proper cleaning and repair thereof. That, in
high-water seasons, the fact of the water flowing out of the regu-
lar channel and over the adjacent lands would tend to cause
sickness amongst the inhabitants of said Boise City. That,
during the high-water seasons of said Cottonwood creek, which
occurred only in the springs of 1892, 1894, and 1897, since the
construction of said flume, the same being caused by freshets,
storms, and warm winds melting the snow in the mountains at
the head of said stream, said waters overflowed the walls, cut
the banks of said flume out, and flowed upon the adjacent lands.
That the mayor and common council of Boise City, for the pur-
pose of preventing and allowing said stream from running in its
natural channel through the limits of Boise City, did, in the
year 1891, change the course of said stream from its natural
course, and forced it to flow in an artificial channel, easterly
from the city limits of Boise City, and outside of said city limits
of the defendant. That, in said year 1891, the mayor and com-
mon council of Boise City did, by contract, cause to be con-
structed said artificial channel or flume herein, out of rock, ce-
ment, and lime, and extending from the point where said Cotton-
wood creek enters Boise valley, outside of said limits of the de-

fendant, from the range of mountains along and without the city limits of Boise City, to the said Boise river. That said artificial waterway or flume runs between the westerly line of said real estate of plaintiffs and the easterly boundary line of said Boise City. That said artificial channel or flume was constructed in manner as follows: That the materials out of which said flume is made are pieces of rock, varying in width and thickness from six inches to four feet, and lined inside in places with lime and cement. That the size of said flume is five feet in height, three feet in width at the bottom, and the walls have a slant of forty-five degrees, making about eight feet distant across from top wall to wall. That the walls of said flume are two feet in thickness, banked up on the outside with gravel and earth, said banks being about three to six feet in thickness. That the average grade of said flume, from where said waters leave the mountains at the mouth of said flume, to Boise river, is about thirty feet. That the average depth of water which runs through said flume, except the high-water seasons of 1892, 1894, and 1897, is about two and a half to three feet. That the mayor and common council of Boise City at the time of the construction of said flume, and subsequent to said time, have built permanent stone dams—one about five hundred feet from the head of said flume, and also one near the head or mouth of said flume —for the purpose of retaining and preventing the sand and gravel from flowing into said flume from said Cottonwood creek. That, ever since the construction of said flume, the same has been used for the purpose of carrying the waters of said Cottonwood creek, where the same leaves said mountains, to Boise river, and that the same has been cared for and maintained by the mayor and common council. That in the month of May, 1897, there came on a high stage of water in Cottonwood creek, which was caused by freshets, winds, and storms, and filled up said flume and water-way with a large volume of water, thereby overflowing the same. That said premises of plaintiffs are situate about two hundred feet from the nearest point where said waters overflowed said flume during said month of May, 1897. That said waters, after overflowing said flume, ran in and upon the premises of plaintiffs, and deposited thereon sand and gravel,

and undermined the said wall on the southerly side thereof, and broke and weakened said wall, and washed away some of the soil of said premises, and injured the house situate thereon, to plaintiffs' damage $500. That said mayor and common council of Boise City have, ever since the construction of said artificial channel or flume, in the spring months of each year, entered into contract with private persons to clean out, repair, and place in good condition said flume. That the amounts spent by the mayor and common council of Boise City upon said flume, in order to keep the same in good condition, were from $400 to $500 each year. That said defendant does not derive any revenue in its corporate capacity from said flume. That, at the time that the waters of said Cottonwood creek, to wit, in the month of May, 1897, flooded over said flume and ran in and upon the premises of said plaintiffs, the mayor and common council of the defendant did employ about fifteen men to assist the street commissioner of Boise City in preventing the waters from flooding out of said flume. At said time, the street commissioner of said defendant and his assistants, to wit, about fifteen men, went to said flume aforesaid with shovels, other tools and sacks of sand, placing said sacks of sand along the top of said walls of said flume, and worked until said waters ceased overflowing said flume, and running upon the premises of said plaintiffs. That, subsequent to the construction of said artificial channel or flume of Cottonwood creek by said mayor and common council of Boise City, to wit, in the year 1891, said plaintiffs purchased said premises herein referred to, and had constructed thereon said wall and dwelling-house mentioned in said second amended complaint herein, and that said plaintiffs knew of the existence, course, and condition of said flume or artificial channel at the time of purchasing and constructing said house and wall. That no legal proceedings have, prior to this suit, been brought by said plaintiffs, or anyone in their behalf, to compel the removal of said flume, or to abate it, nor has anyone given the defendant notice to abate or remove said artificial channel or flume aforesaid."

QUARLES, J. (After Stating the Facts.)—It is contended by the counsel for the defendant, who is the appellant here, that

the action of the mayor and common council in constructing the artificial channel or flume in question is *ultra vires.* That said mayor and common council had no authority to go outside of the city limits to construct such flume. That in doing so they were not performing a duty, but rendering a beneficial service to the state, and must be regarded as the agents, not of the defendant, but of the state. Section 5 of the charter of Boise City provides what powers may be exercised by the mayor and common council, "within Boise City," and grants, among numerous other powers, the power to secure the protection of persons and property therein; to provide for the health, cleanliness, ornament, peace, and good order of the city; to remove nuisances; to provide for the prevention and removal of all obstructions from the streets, cross-walks, and sidewalks, and for cleaning and repairing the same. To remove a nuisance from the city, it sometimes happens that its officers or agents, or someone for it, must necessarily go outside of the city limits. To protect the health of the city, it becomes necessary to construct sewers, running through the city, and emptying at some point outside of and lower down than the city. The power to provide for the health and cleanliness of the city grants power to the mayor and common council to cause sewers to be constructed to carry the waste from and outside of the city, and authorizes the mayor and common council to cause such sewers to be constructed to such points outside of the city as may be necessary in order to rid the city entirely of said waste. In order to protect the streets of said city, to protect the property and the health of its citizens, it appears from the record in this case that it was necessary to construct the artificial channel in question. A grant of power carries with it authority to do those things necessary to the exercise of the power granted. The mayor and common council, in constructing said channel, were exercising a power conferred upon them by said city charter. Now, having acted within the scope of the powers granted by the city charter, the defendant must take care of the said artificial channel, and of the waters which naturally flow in Cottonwood creek, whether during the summer and fall seasons, when such waters are at a low stage, or during the spring thaws, when the said stream is naturally swollen from

melting snows in the mountains. As a part of the common history of the country, we know that more snow falls some seasons than falls others, and that there is more water in said creek during the spring thaws in some years than there is in other years. The record before us shows that during the freshets, or spring thaws, during some of the years since its construction, said artificial channel, on account of its not being large enough, did not and could not carry all of the waters of said stream, causing the flooding of adjacent lands. Of course, the city has no control over the elements, and is not responsible for loss occasioned by the act of God, or by the acts of the common enemy; yet, having constructed such artificial channel, and having diverted said stream from its natural channel, it is under a legal obligation to take care of said artificial channel, and of the waters that naturally flow in said stream, at all seasons. If the damage complained of had occurred through and by means of a cloudburst, or unusual and unprecedented storm, the defendant, not being in fault, would not be responsible. But the injury complained of was caused by said artificial channel being too small to carry the waters of said stream during the spring high waters, and which water was the natural result of usual and ordinary causes, and the defendant is responsible, because it is the fault of said defendant that said artificial channel is not large enough.

The authorities agree that a city is not responsible for the acts of its police and health officers. And the weight of authority is to the effect that, when a city or town is charged by statute with the duty of appointing certain officers, whose mission is to perform services beneficial to the public, and from whose services the municipality derives no profit, the municipality is not liable for the negligence of such officers. But that rule has no application here. There is no command in the defendant's charter directing it to change the natural course of Cottonwood creek. The changing of the channel of said stream was not for the benefit of the general public, but for the benefit of the defendant and its inhabitants. The municipality was directly benefited. By such change it was saved the expense and trouble of controlling the waters of said stream within the city limits, and it avoided the injury which naturally resulted

from the overflowing and flooding of its streets in times of high water. By the express provisions of its charter, the control of its streets is vested in the mayor and common council. Now, to exercise this power, to protect said streets from the injury caused them by flooding, and to save expense to the municipality, the mayor and common council caused said artificial channel to be constructed. In doing this, they were performing a duty, acting within the scope of their powers, and not merely performing a voluntary service to the general public. It is not consonant with reason or the rules of law to say that, if a stream runs through land owned by A, he can protect his property by constructing an artificial channel, and turning the waters of such stream upon his neighbors' lands, to their injury, and not be liable to them. In the case at bar, the defendant, for its benefit, has done this thing. Having changed the channel of said stream, and caused the waters thereof to flow where they did not, and would not, flow by nature, it must keep such artificial channel in condition to carry the waters diverted by it, in high as well as low water seasons, and protect the property of residents upon and near such artificial channel, or respond in damages to the parties injured. If the acts of the mayor and common council which caused the injury complained of consisted in attempting to confine the waters of said stream to the natural channel thereof, to save the property of adjacent owners, and its streets, it would not, of course, be responsible. In the case at bar, if the waters of said stream had not been diverted from their natural course, the plaintiffs' property would not have been injured, but the waters which injured their property would have injured the inhabitants of Boise City, and its streets. It is contrary to natural justice to say, as to the injury complained of, which was caused by the defendant, for its financial benefit, to protect its streets and save it expense, that the plaintiffs, innocent parties, must suffer their loss in silence, and the defendant, though the gainer, is under no obligation to compensate plaintiffs for their loss. The rule applicable to this case is correctly given by Judge Cooley in his work on Torts (first edition), at page 586, where, after giving the rule applicable between private persons, he says: "All the foregoing principles are as much ap-

plicable to municipal corporations, in their dealings with water-courses, as to individuals. Thus, if a town shall so erect a bridge as that the natural and probable consequence shall be to raise the water on the lands above, by the partial obstruction interposed to its flow, the town will be liable, as an individual would for a like obstruction." And, at page 621, he says: "But municipal corporations are responsible for due care in the execution of any work ordered by them, and, if the work is one for the special benefit of it own people, it must not negligently be allowed to get out of repair, to the injury of individuals." And, in a note on the same page, the author says: "Thus, a city is liable if one of its drains or sewers is suffered to become obstructed, whereby the lands of individuals are flooded." And, at page 625, the learned author says: "It is a principle of nearly universal acceptation in this country, when a town is incorporated, and is given control over the streets and walks within its corporate limits, and is empowered to provide the means to make and repair them, that the corporation not only assumes this duty, but by implication agrees to perform it, for the benefit and protection of all who may have occasion to make use of these public easements; and that, for any failure in the discharge of this duty, the corporation is responsible to the party injured." In the case at bar, the charter of the defendant, with the amendments thereto, at the times mentioned in the stipulation of facts, gave the defendant control over its streets, and empowered it to provide means to make, repair, and protect them, and to move obstructions from them. To do so it was necessary to construct the artificial channel in question. The defendant assumed this duty. By assuming this duty, and by accepting the power granted by the charter, under which it acted, its liability to construct and keep the artificial channel in question of such capacity that it would carry the waters of Cottonwood creek, without damage to the owners of property in its vicinity, is implied. (See Shearman and Redfield on Negligence, 4th ed., secs. 255, 281; *New York etc. Lumber Co. v. City of Brooklyn,* 71 N. Y. 580.) In *Anthony v. Inhabitants of Adams,* 1 Met. (Mass.) 284, the court says: "We can have no doubt that an action upon the case will lie

against municipal corporations, when such corporations are in the execution of powers conferred on them, or in the performance of duties required of them by law, and their officers, servants, and agents shall perform their acts so carelessly, unskillfully, or improperly as to cause damage to others." In *Welsh v. Village of Rutland,* 56 Vt. 228, 48 Am. Rep. 762, the court recognizes the rule that a municipality is responsible for the negligent exercise of powers granted, and cites the following instances: The construction and maintenance of waterworks, of ditches or drains, of bridges or culverts, and structures which obstruct the flow of natural watercourses, and of public works—and then adds: "If a plan adopted for public works must necessarily cause injury or peril to private persons or property, though executed with due care and skill, the law regards the execution of such a plan as negligence." In *Maxmilian v. Mayor etc. of New York,* 62 N. Y. 160, 20 Am. Rep. 468, the plaintiff's ancestor was killed by being negligently run over by an ambulance wagon driven by an employee of the commissioners of public charities, and the court held that the city was not the principal of the employee of the commissioners. The decision rested upon two grounds —one, that the relation of principal and agent did not exist between the defendant city and the ambulance driver, the other ground being that the defendant, in its corporate capacity received no benefit whatever from the service rendered by the commissioners of public charities. The case is, so far as both the grounds named are concerned, unlike the case at bar, and that the decision is not applicable as authority here. The weight of authority is to the effect that, when a duty devolves upon a municipality which is ministerial in its nature, the municipality is liable for injuries received through a negligent discharge of such duty, or through failure to perform such duty. In Dillon on Municipal Corporations, fourth edition, section 1048, it is said: "It is agreed that, wherever the duty as respects drains and sewers ceases to be legislative or judicial or *quasi* judicial, and become ministerial, then, although there be no statute giving the action, municipal corpo-

ration is liable, to the same extent and on the same principles, as a private person or corporation would be under like circumstances for the neglect or the negligent omission to discharge such duty, resulting in an injury to others." And, in the foot-note to said section, the learned author illustrates the distinction between a judicial and ministerial act in the following language: "A corporation may be said to act judicially in selecting and adopting a plan on which a public work shall be constructed; yet, as soon as it begins to carry out that plan, it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner." (Dillon on Municipal Corporations, secs. 980, 983, 1048.) In the case before us, a condition confronted the defendant city. Its streets were being overflowed and damaged by the waters of a natural stream flowing through its boundaries. The presence of the said natural stream obstructed its streets at times, endangered the health of its inhabitants, and was a source of expense and annoyance. To meet this condition, and avoid its consequent evils, the mayor and common council, in fact, the municipality itself, decide to change the course of said natural stream by building an artificial channel sufficient to carry the waters of said stream therein. Thus far the act was *quasi* judicial. But, when it came to carrying out this plan, the acts were ministerial. It became the duty of the defendant to construct said artificial channel of sufficient permanency, strength, and size to carry all of the waters of said stream, and for its failure to discharge this duty, it is responsible to anyone injured by such failure. (*Perry v. City of Worcester*, 6 Gray, 544, 66 Am. Dec. 431, and note; *Powers v. City of Council Bluffs*, 50 Iowa, 197; *Spangler v. San Francisco*, 84 Cal. 12, 18 Am. St. Rep. 158, 23 Pac. 1091; *Mayor etc. v. Bailey*, 2 Denio, 433. See notes to *Chapman v. City of Rochester* (N. Y. App.), 1 L. R. A. 226.) In the opinion of that case, speaking of the pollution of the stream to the injury of plaintiff, caused by sewage conveyed to said stream by a sewer, constructed by the defendant, the court says: "The filth of the city does not flow naturally to the lands of the plaintiff, as surface water finds its level, but is carried thither by arti-

ficial arrangements prepared by the city, and for which it is responsible." In the case at bar the waters of Cottonwood creek do not flow naturally to the lands of the plaintiffs, but are "carried thither by artificial arrangements prepared by the city, and for which it is responsible."

It is urged by the appellant that the evidence is not sufficient to support the judgment. It is one of the facts stipulated that during the high-water seasons of 1892, 1894, and 1897, the artificial channel in question would not carry the waters of said stream, and the same was overflowed, and the adjacent lands flooded. It is not agreed that during the springs of said years the flooding of said artificial channel was the result of any cause, other than the natural and ordinary cause which came from the breaking up of winter and the introduction of spring, and there was no evidence offered by the defendant to show that the injury complained of resulted from any unusual cause which could not be reasonably anticipated. If the said injury was the result of unavoidable casualty, or the result of conditions which are unusual and could not be reasonably anticipated, the existence of such conditions would be a defense, but such defense should be pleaded and proven. We think the evidence sufficient to support the judgment. The natural and reasonable inference from the agreed statement of facts is that the artificial channel in question is not large enough to carry the waters of Cottonwood creek during the spring seasons. This fact was demonstrated the next spring following its construction, showing that it was negligently made too small. Having actual notice that said artificial channel was not large enough to carry the waters diverted by the defendant, soon after its construction, the defendant has negligently omitted to enlarge the same, and, now that innocent parties have suffered, seeks to avoid liability, principally on the ground that the action of the mayor and common council in constructing said artificial channel and diverting said stream, being outside of the city, is *ultra vires*. But it is urged that the plaintiffs, having bought the land in question after the construction of said artificial channel, are estopped from recovering by such notice. We do not think so. The plaintiffs were

justified in relying upon the defendant to perform its duty by taking care of the waters which it had diverted from a natural stream. It was the duty of the defendant to protect all of the property along the line of said artificial channel, not only for the benefit of the persons who owned such property at the time of the construction of such artificial channel, but also for the benefit of their successors in interest. In the case of *Arave v. Canal Co.*, 5 Idaho, 68, 46 Pac. 1024, this court, speaking through Mr. Justice Huston, said: "Appellants' contention that the plaintiff was guilty of contributory negligence in erecting his house and other improvements, when they were liable to be damaged by the canal of the defendant, subsequently constructed, is not maintainable. . . . . The maxim, 'So use your own property as not to injure the rights of another,' applies as well to corporations as to individuals. Appellants' claim that the corporation defendant is not called upon to consider or inspect the rights of settlers along the line of its canal, who have made such settlement subsequent to the location of the canal, is not only unsupported by law, but is repugnant to every principle of equity and good conscience." The material facts set forth in the stipulation of the parties were pleaded in the amended complaint. The defendant filed a general demurrer to said amended complaint, which demurrer was overruled by the district court, properly, we think, as said amended complaint states a cause of action. Counsel for appellant has spent much time in research, and made a strong and able argument for the city, but it does not convince us that the judgment appealed from was erroneous. Judgment affirmed, with costs to the respondents.

Huston, C. J., and Sullivan, J., concur.