GEORGE G. FRELINGHUYSEN ET AL. v. TOWN OF MORRIS-TOWN ET AL.

Submitted February Term, 1908—Decided June 8, 1908.

1. The act of 1902 to authorize incorporated towns to construct, operate and maintain a system of sewers (*Pamph. L., p.* 371) applies to any town which may be incorporated at the time proceedings under the act are begun.

2. The title of chapter 124 of the laws of 1902 (*Pamph. L., p.* 371) sufficiently expresses the object of the act, including the authority to construct sewage disposal works beyond the limits of the town.

3. Chapter 124 of the laws of 1902 (*Pamph. L., p.* 371) is not invalid because of the power given to erect sewage disposal works within the bounds of another municipality.

4. It is not necessary for an incorporated town which is acting under the Sewer act of 1902 (*Pamph. L., p.* 371) to secure the consent of another municipality to the erection of sewage disposal works within the territorial limits of the latter, nor is such consent made necessary by the act of 1907. *Pamph. L., p.* 707.

5. The action of a sewerage board of an incorporated town under chapter 124 of the act of 1902 (*Pamph. L., p.* 371) is only a preliminary to legislative action by the governing body of the town and by the voters at a special election; and the determination of the sewerage board fixing as a site for disposal works land in which a member of the board is interested, is not voidable in the absence of actual fraud.

6. The prosecutors waited until after the plan of the sewerage board, including the location of a disposal plant, had been submitted to and approved by the voters at a special election. *Held,* that they cannot be permitted to question by *certiorari* a contract because it provides for the erection of a disposal plant at the place fixed, upon the ground that the town has not yet acquired title, when the law authorizes the acquisition of the title by condemnation.

On *certiorari.*

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the prosecutors, *Vreeland, King, Wilson & Lindabury* and *Pitney, Hardin & Skinner.*

For the township of Hanover, *R. Wayne Parker, Cortlandt Parker* and *Chauncey G. Parker.*

For the town of Morristown, *Edward K. Mills.*

For the board of sewerage of Morristown, *Willard W. Cutler.*

The opinion of the court was delivered by

SWAYZE, J.   The writ in this case has brought here for review the proceedings of the board of sewerage of the town of Morristown for the construction of sewage disposal works for that municipality within the bounds of the township of Hanover.   The proceedings were taken under the act of 1902.  *Pamph. L., p.* 371.

The first objection to be considered is the constitutionality of the act.   It is assailed, first, as a special act because it is said to apply only to towns incorporated prior to its passage. This contention is based on the first sentence of the act, which makes it applicable to any town "which has been incorporated under any general or special law."   We think the interpretation sought to be put on these words is too narrow. The language may naturally be construed as including any town which has been incorporated at the time proceedings are begun.   In *Butler* v. *Montclair, 38 Vroom 426,* we sustained the constitutionality of an act which applied only to towns "whenever there has *heretofore* been constructed" an outlet or connecting sewer.   It was held that the word "heretofore" related not to the time of the passage of the act, but to the time of incorporation of the town, whether before or after that date, and earlier cases were relied on to justify

that latitude of construction. The present case is well within that rule.

The act is assailed also because by its title it relates only to incorporated towns, and does not therefore point to an intention to legislate with reference to the construction of disposal works in townships. This contention is answered by our decision in *Newark* v. *Orange,* 26 *Vroom* 514, where we held that an act entitled "An act to provide for drainage and sewerage in cities of this state" authorized cities to carry their sewers through adjacent townships to tidewater. The court said: "It is a matter of common knowledge that there are cities in the state which have not within their limits an available outlet for sewage. For such cities an act would be futile which did not authorize the entrance upon adjacent territory. The title of this act, making provision for the relief of all cities, clearly suggests that it will be so framed as to furnish all the means and instrumentalities requisite to make it effective in the various localities and situations to which it extends. It must be presumed that the lawmaker will so mould the act as to give relief in every case and adapt it to the wants of every political district of the class, so that it will, in fact and in effect, be a general law." The same reasoning is applicable to incorporated towns. The well-known density of population in this state naturally suggests that an effective act for the sewerage of incorporated towns of which all may avail themselves, would be so drawn as to authorize sewers or disposal works outside of the municipality. The case is not distinguished by the fact that it may be necessary that sewers have an outlet on tidewater, while there is no such necessity that sewage disposal works be erected outside the municipality. The necessity may be as great in one case as in the other. Even if there is not a strict necessity that disposal works should be located outside the municipality, it is so manifestly desirable that such works should be located away from the densely populated centres that the title of the act would naturally suggest the possibility.

The argument that the act attempts to vest in Morristown legislative or police powers to be exercised within the political

limits of Hanover township ignores the fact that the police power is vested in the state and not in the municipalities, which are but subordinate agents of the state, and subject to its control. In the exercise of the police power of the state, the legislature may authorize one municipality to invade the territory of another for the purpose of constructing sewers for sanitary purposes, and the state does not thereby surrender its right to protect the public health by subsequent enactment, regulating and controlling the mode of construction and manner of use. *Millburn* v. *South Orange,* 26 *Vroom* 254 (at *p.* 262). In *Chicago Packing Co.* v. *Chicago,* 88 *Ill.* 221, the court sustained the right of Chicago to exercise the police power to control works in the township of Lake, which were injurious to residents of Chicago. The case of *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 42 *Vroom* 574, contains no intimation to the contrary. The Court of Errors and Appeals in that case expressly sustained the authority of the legislature to create a sewerage district out of parts of several municipalities. When it added that a different question would be presented if the statute concerned itself with the internal sewerage of any of the municipalities and substituted an alien commission to carry its requirements into effect, it did not mean that the territorial bounds of a municipality constituted a limit to its management and disposal of its own sewage. Such a construction would work havoc with some, and doubtless with many, of the municipal sewerage systems of the state. In *Bloomfield* v. *Glen Ridge,* 10 *Dick. Ch. Rep.* 505, the Court of Errors and Appeals held that the entire sewer system was the property of Bloomfield, although part of it was within the territory of Glen Ridge, and that the right to control, regulate and maintain the sewers was vested exclusively in Bloomfield, and that an ordinance of Glen Ridge asserting a right to control and regulate the sewers within its territory, and permits by Glen Ridge to make connections, were subject to be set aside on *certiorari.* One of the reasons which moved the court to that result was that the sewer system was an entirety and could not be advantageously controlled and devoted to its intended use unless

under one management. The same reason is applicable to a disposal works which is necessary for the proper and efficient management of a system of sewerage. What governmental control the township of Hanover may still retain over the territory to be occupied by the disposal works is a question not now before us.

Passing from the question of the validity of the statute to its effect, the most serious objection urged against the present proceedings is that the consent of the township of Hanover to the erection of the disposal plant has never been obtained. That objection is open in the present case, as well as in the pending suit by the township of Hanover as prosecutor, since the present prosecutors are taxpayers and entitled to challenge the expenditure of public money in building disposal works, if the works cannot legally avail the town of Morristown.

It is not suggested that the consent of Hanover is made necessary by the act of 1902. The argument is that it is required by prior or subsequent legislation, evincing a legislative policy. Four acts are relied upon: (1) an act of April 9th, 1892 (*Pamph. L., p.* 452); (2) an act of June 13th, 1895 (*Pamph. L., p.* 822); (3) section 63 of the General Township act of 1899 (*Pamph. L., p.* 397); (4) an act of October 29th, 1907 (*Pamph. L., p.* 707).

The act of 1892 is entitled "An act to allow towns, villages or other municipal corporations to acquire and use lands or real estate in an adjoining township or other municipal corporation for use for the construction of a sewage receptacle or sewage disposal works." An attempt was made to repeal this act by "An act concerning townships" (Revision of 1899). *Pamph. L., p.* 372. It may be doubtful whether an act which both by its title and its provisions applies to towns, villages and other municipal corporations can, under the constitutional provisions, be repealed by an act which by its title relates only to townships, but it is unnecessary to dwell upon this question for a reason presently stated.

The act of 1895 is entitled "An act to regulate the location of pest houses, crematories and other objectionable

structures." Its scope is limited by this title. In one sense
a sewage disposal works may be called a structure, although
the use of the word to include a disposal plant seems a little
strained, but another consideration leads us to think that a
more restricted meaning must be attributed to it. Words,
like men, are known by the company they keep; and the
word "structure" is here found in company with crematories
and pest houses. It must mean some structure of like char-
acter; that is, some sort of a building.

The section of the act of 1899 which is relied upon fol-
lows sections authorizing townships to construct sewers, and
is placed under the heading of sewers and drainage. It is
evidently meant to restrict the right of townships to locate
disposal works within another municipality and not to pro-
tect townships from the works of other municipalities. It is
a part of the scheme for sewers to be built by the township.
If this were not so, a different result would necessarily have
been reached in *Philadelphia Trust Co.* v. *Merchantville,* 46
*Vroom* 451, recently decided. The point was distinctly made
in that case that the borough of Merchantville was not author-
ized by law to build a sewage disposal plant in the adjoin-
ing township of Pensauken. The court disposed of the case
without referring to the Township act of 1899, evidently be-
cause it was thought that the question was entirely governed
by the Borough act of 1897.

All of these acts were passed before the act of 1902, under
which Morristown is proceeding. That act not only carefully
omits any restriction as to the place where a disposal works
may be built, but in express terms authorizes the construction
of disposal works within or without the town (section 1).
This power is repeated in section 11. In neither section is
the consent of any other municipality required. This omis-
sion is most significant in view of the other legislation re-
quiring such consent, which we must presume was present
to the mind of the legislature. It is made more emphatic be-
cause in section 11, immediately following the authority to
construct disposal works, provision is made for an agree-
ment between the board of sewerage and the authorities

of the other municipalities as to the terms upon which the sewers may be constructed through the streets and highways, with an appeal to the Circuit Court to appoint commissioners to determine the streets and fix the terms upon which they may be used and occupied, in case an agreement cannot be reached with the municipal authorities. If the legislature had meant to require consent to the construction of disposal works, it would have inserted it at this point where the mind is naturally directed to the question by the somewhat analogous question of the use of streets. It is quite evident from the omission in the one case and the insertion of the requirement of an agreement in the other, that the legislature drew a distinction between land, the title to which might be acquired by the town, and streets or highways which could be used only subject to the public easement, and did not mean to require consent of the other municipality to the work of the town merely because it consisted of building a sewer system, and might be more or less objectionable.

It is quite true that the act of 1902 contains no express repeal of the acts of 1892, 1895 or 1899, that implied repealers are not favored, and that there is no necessary repugnancy between an act authorizing a town to build sewage disposal works and an earlier act requiring the consent of a municipality before another can build such works within its bounds. But even when there is no express repeal, and no necessary repugnancy, if it is plain that it is the legislative intent to embrace the whole subject or to provide a scheme complete in itself, the later act supersedes the earlier. *Roche* v. *Jersey City,* 11 *Vroom* 257; *De Ginther* v. *New Jersey Home,* 29 *Id.* 354; *Camden* v. *Varney,* 34 *Id.* 325. The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the legislature frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. *Roche* v. *Jersey City, supra.* The ques-

tion is one of legislative intent, and the Court of Errors and Appeals has held, following the Roche case, that when a later law deals generally with the subject-matter of earlier statutes, not simply as a revision, but as a new and independent enactment, that affords decisive evidence of an intent to abrogate and repeal the older legislation. *Haynes* v. *Cape May*, 23 *Vroom* 180, 182. This is so even though the scheme is not absolutely complete, but is complete only for municipalities of the class affected. *Wilson* v. *Trenton*, 27 *Id.* 469.

The act of 1902, both by its title and its provisions, assumes to provide a complete scheme by which incorporated towns may construct, operate and maintain a system of sewers. Nothing necessary for that purpose is omitted, and we think the legislative intent is clear that in this respect incorporated towns should be governed by this act alone.

It seems to be thought by counsel for the prosecutor that the act of 1902 is modified by the act of 1907. *Pamph. L., p.* 707. This act was approved after these proceedings were begun, but, passing by all other questions that may be raised, we think it clear that the act does not apply to the case of incorporated towns proceeding under the act of 1902. It can, by its terms, apply only to municipalities where there is a municipal board having charge of the sewers therein. The board of sewerage, under the act of 1902, does not have charge of the sewers, but only of their construction; section 9 expressly limits the existence of the board to the time of the completion of the work. Again the act of 1907 is applicable only to municipalities with a board or commission having charge of the finances of the municipality. Morristown does not seem to come within this requirement. And section 8 of the act of 1907 makes it quite clear that the act was meant only for cities.

The next contention of the prosecutors is that Morristown had not secured the consent of the state sewerage commission as required by section 7 of the act of March 21st, 1900. *Pamph. L., p.* 113. The act requires that plans shall be submitted to the state commission and that it shall be unlawful, without its approval, to construct any plant from which the affluent is to

flow into any of the waters of the state. The plans were submitted and were approved "subject to such conditions of construction, operation and purification as this commission may from time to time require." We think that this was not a conditional but was an absolute approval of the plans, and that all the words quoted mean is that the state commission reserves the right from time to time to require changes of construction as the need may arise. The conditions as to operation and purification clearly relate to the future use of the plant and can have no relation to present plans, which alone are required to be submitted. The approval of the plans is not merely tentative, and was not so regarded by the prosecutors at the time, for they petitioned the state commission to rescind its approval of the plans. The state commission has never acted on that petition and the approval remained unrescinded when the contract was awarded.

One of the sewerage commissioners of Morristown is Eugene S. Burke, who is a member of the firm of Pruden & Burke. Just prior to the determination of the sewerage commissioners as to the location of the disposal plant, and apparently in contemplation of that approval, Pruden & Burke bought the land in question, and it is said that Burke's personal interest in the land vitiates the official action of the board of which he was a member. His good faith is not impugned. In fact he seems to have acted from public spirit in buying the land before it was known that it would be wanted by the municipality, and at a time when it could be bought more cheaply. After his purchase he and his partner immediately offered to convey to the town such part of the land as it wanted without profit to themselves, and they subsequently made an offer in writing on terms which seem to have been advantageous to the town. It is possible that they may be held to have acquired the land in trust for the town, but it is unnecessary, as the case now stands, to consider the question of Mr. Burke's good faith. The rule which is appealed to by the prosecutors relates to proceedings of a judicial character and rests upon the principle that no one should be a judge in his own cause. Whether the proceeding is of a judicial character or not is the

question to be determined. *Moore* v. *Haddonfield,* 33 *Vroom* 386; *Sears* v. *Atlantic City,* 44 *Id.* 710.

We think the present proceeding was legislative, not judicial.

The determination of the place of location of the disposal works was a part of the general plan or scheme which the act required the sewerage commission to adopt and submit to the governing body of the town. That body in turn, after a public hearing, might accept, modify or reject the plan. If they accepted, it must still be submitted to the voters at a special election, of which notice was required to be given. The action of the sewerage commissioners, therefore, was only a preliminary step to legislative action on the part of the voters themselves, and was not in itself final or binding. It is perhaps too much to call such a recommendation of the sewerage commissioners a legislative act; it certainly is not judicial. We think Mr. Burke's interest as an owner of the land did not vitiate the proceedings.

In proceedings of this character, where the approval of the voters is required, a definite plan must be submitted. The criticism of the present proceedings is that no piece of ground in either Hanover township or Morris township was designated with precision. The report of the board of sewerage designated the location as "near the road dividing the township of Morris from the township of Hanover, and near the old burnt mill, said disposal works to be constructed without the limits of the town of Morristown and in either the township of Morris or in the township of Hanover, as shall be considered most desirable as the work progresses." The statute (section 4) requires the board of sewerage commissioners to determine whether the system shall extend throughout the town, or, if in parts of the town only, in what parts; through what streets it shall be constructed; in what manner the sewage shall be disposed of, and if by connecting with the disposal works without the limits of the town, the general location of such connecting sewer or sewers. This language indicates that it was not the exact and precise, but only the general location of the disposal works that was to be determined in advance. It

is not questioned that the report sufficiently indicates this general location. In fact it indicated it with sufficient precision to arouse opposition on the part of the present prosecutors. We think the report complied with the statute.

The last objection argued applies to the contract only. It is said to be unauthorized because at the time it was made the town did not own the land on which the disposal works were to be built. We think it a sufficient answer that some six months before the contract was signed the commission received a written offer to convey the land from Pruden & Burke, which seems to be still open, acceptance having been delayed only because the present controversy arose, and that the commission was authorized to acquire the land by condemnation and had passed a resolution authorizing their counsel to apply for a commission. The conclusive answer, so far as the present prosecutors are concerned, is that no other location would comply with the vote of the people adopting the plan of the board of sewerage. In this respect the prosecutors are in laches.

The proposed location of the disposal works was made public as early as February 26th, 1907, when it was presented to the board of aldermen. Due notice was given of a hearing before that board. There was then an opportunity to secure a modification of the plan. None seems to have been suggested that affected the location of the disposal works. The plan was approved by the board of aldermen on March 22d. Notice was given of an election to be held April 30th. Although in form the question submitted to the people was the acceptance of the act of 1902, in substance it was the acceptance of the proposed plan for a sewer system. The plan was accepted by a vote of 1,031 to 59. As far as the records show the first objection came on May 8th. It is obvious that any change in the location of the disposal works would or might be a radical change in the plan, upon which the voters have not been, and cannot by virtue of any statutory provision be, consulted.

In view of the substantial unanimity for the proposed plan it is altogether probable that a majority of the voters would not approve of a change, especially as the only change pro-

posed involves a large additional expenditure which may amount to $70,000. In view of the statutory provisions requiring an assent of the voters at a special election for the purpose, and the opportunities afforded for a hearing and for modification of the plans, we think the prosecutors waited too long when they waited until the election had been held. If in fact they protested before the election, although the record fails to show it, their position is worse, since their objections have been overruled by the tribunal to which the decision was committed by the statute.

The proceedings are affirmed, with costs.