WALDEN, Judge.
This petition for certiorari concerns the law of eminent domain.
The City of West Palm Beach instituted a condemnation proceeding, via its eminent domain power, to appropriate a strip of land located solely within the Town of Palm Beach for the construction of pipe lines and/or mains for an ocean outfall as part of a sewage disposal system for the City of West Palm Beach and uses incidental thereto. The plan was to build a pipeline 48" in diameter, capable of transmitting 60 million gallons of public sewage daily, which would pass through Palm Beach to a discharge point 5800 feet offshore in the Atlantic Ocean. Prior to discharge, the sewage would be subjected only to preliminary treatment, i. e. the removal of floating objects, the grinding of solid matter, and the injection of chlorine for odor control. In addition to obtaining land for the pipeline, the City of West Palm Beach also sought to take land for the construction of a reinforced masonry vault or chamber, the purpose of which would be to remove methane and hydrogen sulfide gas and air which might collect in the pipeline and create a possible air lock.
Pursuant to F.S.1967, section 74.051, F.S. A., a hearing was had to determine if the City of West Palm Beach should be allowed to appropriate the necessary land. The trial court found in the affirmative and granted an Order of Taking over the objection of the Town of Palm Beach. Upon having its motion for a re-hearing denied, the Town of Palm Beach has petitioned this court for certiorari in an effort to secure relief from the Order of Taking.
*837 The narrow issue presented by the petition is
“Whether the taking of petitioner’s property for the construction of an outfall for the transmission and disposal of sewage into the off-shore waters of the Atlantic Ocean, and for other uses allegedly incidental thereto, under the order of taking entered by the court below, is within the power of eminent domain delegated to the City of West Palm Beach?”
The first point to consider is whether a municipality may use the power of eminent domain delegated by F.S.1967, chapter 184, F.S.A., to acquire property within the city limits of another municipality for the purpose of constructing mains and lines constituting a sewage disposal system. It will be seen that F.S.1967, section 184.03, F.S.A., confers broad powers upon a city in achieving an effective sanitary disposal system:
“Section 184.03: General grant of powers.
“The council of any municipality in the state is hereby authorized and empowered :
“(1) to construct, and to improve, extend, enlarge, reconstruct, maintain, equip, repair and operate a sewage disposal system or systems, either within or without or partly within and partly without the corporate limits of the municipality, and to construct or reconstruct sanitary sewers within the corporate limits of the municipality;
* * * * * *
“(4) to acquire in the name of the municipality, either by purchase or the exercise of the right of eminent domain, such lands and rights and interests therein, including lands under water and riparian rights, and to acquire such personal property, as it may deem necessary in connection with the construction, reconstruction, improvement, extension, enlargement or operation of any sewage disposal system or sanitary sewers, and to hold and dispose of all real and personal property under its control;
* * * * * *
“ (8) to construct and operate trunk, intercepting or outlet sewers, sewer mains, laterals, conduits or pipelines in, along or under any streets, alleys, highways or other public places within the state; * * (Emphasis supplied.)
Thus, F.S.1967, section 184.03, F.S.A., clearly authorizes the taking of land in another municipality to construct the system.
The question then arises as to whether this chapter authorizes the taking of land in order to construct the gas removal vault or chamber, an integral part of West Palm Beach’s plan. Petitioner, the Town of Palm Beach, contends appropriation of land for these purposes requires its consent and approval per F.S.1967, section 184.02(4), F.S.A. The relevant portions of this section provide:
“ * * * that in the event of an extension into * * * another incorporated area, the governing body of the county or affected municipality must have first approved thereof, other than such mains and lines as constitute a part of the 'sewage disposal system. * * * ” (Emphasis Respondent — West Palm Beach’s.)
Respondent counters the effect of this section by directing our attention to F.S.1967, section 184.02(3), F.S.A.:
“The term ‘sewage disposal system’ shall mean and shall include any plant, system, facility or property used or useful or having the present capacity for future use in connection with the collection, treatment, purification or disposal of sewage, including industrial wastes resulting from any processes of industry, manufacture, trade or business or from the development of any natural resources, or any integral part thereof, and, without limiting the generality of the foregoing definition, shall embrace treatment plants, pumping stations, intercepting sewers, pressure lines, mains and all necessary *838 appurtenances and equipment, and shall include all property, rights, easements and franchises relating to any such system and deemed necessary or convenient for the operation thereof.” (Emphasis Respondent’s.)
We believe that the construction of the gas removal vault is an integral part and necessary for the purpose, operation, and maintenance of the proposed sewage disposal system. The vault in its location is, as we understand it, indispensable to the operation of the "mains and lines.” Thus we opine that it is within the definition of such a system as indicated by the italicized portions of F.S.1967, section 184.02 (3), F.S.A. Accordingly, the consent provision of F.S.1967, section 184.02(4), F.S.A., is not applicable. This argument by respondent is strengthened in view of F.S. 1967, section 184.18, F.S.A., which provides, in part:
“ * * * This chapter being necessary for the welfare of the inhabitants of the municipalities in the state, shall be liberally construed to effect the purposes thereof.”
As a general proposition as concerns the right of a municipality to condemn land in another municipality for the construction of sewer lines we notice with approval the commentary in McQuillin, Municipal Corporations, § 31.16, as follows:
“§ 31.16. Sewers extending beyond corporate limits.
“It is usual for municipal charters, or legislative acts applicable, to provide for the construction of sewers which extend into or drain territory beyond the corporate limits. And it has been held that a municipality having power to construct sewers may extend the same beyond its boundaries when necessary or manifestly desirable to afford a proper outlet for the disposal of its sewage. That is to say, power being expressly given to a municipality to construct sewers within its area, the power to secure an outlet for them beyond its boundaries follows necessarily by implication, and such a sewer is to be regarded as an improvement within the municipality, subject to local assessment. This forms an exception to the general rule that a municipal corporation cannot acquire land beyond its boundaries, or perform any lawful act beyond the same, unless expressly empowered to do so.
“As previously observed, a municipality having power to maintain a system of sewers may, as an incident to such power, contract for the disposition of the outfall of its sewers beyond its limits. But authority to extend its sewers into and across the territorry of an adjoining township does not authorize the extension of sewers into a township that nowhere adjoins the municipality. Unless authorized by statute a municipal corporation cannot extend its sewers into the territory of another municipality without its consent; (Power may be given to erect sewage disposal plant within the limits of another municipality without its consent. Frelinghuysen v. Morristown, 76 N.J.L. 271, 70 A. 77, affd., 77 N.J.L. 483 [493], 72 A. 2. Borough, held authorized to acquire land in an adjoining township for a sewage disposal plant without the latter’s consent. Philadelphia Trust, Safe Deposit & Insurance Co. v. Merchantville, 75 N.J.L. 451, 68 A. 170, affd. 76 N.J.L. 822, 74 A. 1135) nor does power to municipal authorities to construct a sewer in the city authorize its construction beyond the city limits. But it has been held that a municipality empowered to construct its sewers within and beyond its limits and to acquire outlets for its sewage beyond its limits, has power to construct its sewers within the limits of an adjoining municipality to secure such an outlet. [Wilson v. Boise City, 6 Idaho 391, 55 P. 887 (drainage canal, part of which was outside city limits, could be constructed by city). Callon v. Jacksonville, 147 Ill. 113, 35 N.E. 223 (land could be purchased by city out *839 side limits for purpose of extending sewer to its outlet)]”
The second point for consideration is whether the lower court was correct in its determination that the construction of a sewage disposal system is a public purpose and therefore within the power of eminent domain delegated to municipalities. The Town of Palm Beach takes the position that although the construction of a sewage disposal system has been statutorily declared to be a public purpose, the proposed system by West Palm Beach which used an ocean outfall is against public policy by virtue of F.S.1967, chapter 403, F.S.A., and therefore not a public purpose.
Respondent agrees that a sewage disposal system incorporating an ocean outfall is subject to regulation by the Florida Air and Water Pollution Control Commission, per F.S.1967, chapter 403, F.S.A., and that such a plan must meet the established requirements by the Commission, and that should unforeseen dangers arise such that these requirements need to be made increasingly more stringent in the future, that respondent would have to comply. However, we believe that Chapters 28-5 and 28-6 of the Rules of the Florida Air and Water Pollution Control Commission, adopted pursuant to F.S.1967, section 403.061, F.S.A., indicated the planned sewage system is not prohibited by F.S.1967, chapter 403, F.S.A. In fact, systems utilizing an ocean outfall are permitted per Chapter 28-5.02(5) of the Rules and Regulations adopted by the Pollution Commission:
Wastewaters discharged to coastal waters will receive the best practicable treatment. Where less than secondary treatment is prescribed, it must be demonstrated to the satisfaction of the State of Florida that the lesser degree of treatment will cause no interference with beneficial water uses.
“Where preliminary treatment is prescribed for wastewater discharged to the ocean along the Southeastern coast of Florida; i. e., Palm Beach County southward through Monroe County, the following requirements will be met:
“Waters shall be free of all floatable solids, including but not limited to grease, so that all territorial waters (water along the shore as well as open seas) are protected for aesthetic and recreational public health uses. Floatable solids shall be defined as those solids that float not only at the point of discharge but at any point within the territorial limits of the United States.
“The above requirements may be accomplished by the following processes: screening (coarse and fine), comminution, sedimentation, floatation, centrif-ugation, and the addition of chemicals. Where less than secondary treatment is proposed, ocean outfalls, with diffusion devices, shall be installed to terminate at the Gulf Stream.”
Respondent additionally points out that the testimony of Vincent D. Patton, Director of the Florida Air and Water Pollution Control Commission substantiates this position:

T. p. 8

“Q. Pursuant to Chapter 403, has the commission adopted rules and regulation to control the construction of sewage disposal systems, including ocean outfalls?
“A. Yes, sir, it has adopted Chapter 28-5 and 28-6.
“Q. All right.
"A. Which can or do bear on the subject.
“Q. All right, sir. Are ocean outfall systems permitted to be constructed within the State of Florida by the Florida Air and Water Pollution Commission ? O
“A. Yes, sir. >
“Q. In what areas of the State of Florida, sir? O
“A. In all areas.”
*840 It is thus apparent that the State Legislature, in adopting F.S.1967, chapter 403, F. S.A., has recognized the dangers of pollution, but most certainly has not declared sewage disposal systems incorporating an ocean outfall to be against public policy, and not a public purpose. In fact, property has been taken for the construction of drains or storm sewers in order to promote the public health, comfort and welfare. Ft. Myers v. State, 1928, 95 Fla. 704, 117 So. 97.
With this discussion and having fully considered the instant petition for certiorari, the same is hereby
Denied.
OWEN and REED, JJ., concur.