0701

ST. ANDREWS PUBLIC SERVICE DISTRICT COMMISSION, Appellant v. COMMISSIONERS OF PUBLIC WORKS of the CITY OF CHARLESTON, Respondent.

COMMISSIONERS OF PUBLIC WORKS of the CITY OF CHARLESTON, Plaintiff v. ST. ANDREWS PUBLIC SERVICE DISTRICT COMMISSION, Defendant.

(344 S. E. (2d) 857)

Court of Appeals

*David G. Jennings* of *David G. Jennings, P.A.,* Charleston, *for appellant.*

*Augustine T. Smythe* of *Buist, Moore, Smythe & McGee, Lucas C. Padgett, Jr.* Charleston, *for respondent.*

Heard March 19, 1986.

Decided May 12, 1986.

SANDERS, Chief Judge:

Appellant St. Andrews Public Service District Commission brought an action seeking to exercise the power of eminent domain outside its territorial limits by condemning property owned by Seaboard System Railroad for the purpose of constructing a sewer line. The Railroad brought a separate action seeking to enjoin the Commission from condemning its property. Without objection, the actions were combined for a hearing by the Circuit Court on the single issue of whether the Commission could exercise the power of eminent domain outside its territorial limits. Following the hearing, the court issued its order ruling that "the Commission has no authority to exercise the power of eminent domain for the construction of sewer lines that will lie outside the territorial limits of the District."[1] We affirm.

The St. Andrews Public Service District and its governing commission were created by the Legislature in 1949 to serve an area located across the Ashley River from the City of Charleston. *See* Act No. 443, 1949 S. C. Acts 1015.

Pursuant to an election held in 1960, some of the territory served by the Commission was annexed by the city resulting in part of the area served being separated from the rest of it. Following the annexation, the Legislature enacted Act No. 972, 1960, S. C. Acts 2282. Paragraph 1 of Section 3 of Act No. 972 provides that "all sewers and sewage disposal facilities which are located in the annexed areas shall become the sole property of the City of Charleston."[2]

---

[1] While this appeal was pending, the Railroad sold its property to the Commissioners of Public Works of the City of Charleston, and they were substituted for the Railroad as the respondent on appeal.

[2] On the same day, the Legislature enacted Act No. 973, 1960 S. C. Acts 2285. Sections 2 and 3 of this Act give the Commission bonding authority, subject to referendum, "for the purpose of constructing additional sewage disposal facilities in the District." Section 13 specifically provides that "[t]he provisions of this act shall not apply to any former area of the district which was annexed to the City of Charleston pursuant to the election held on May 9, 1960."

Since the 1960 annexation, the Commission has, by agreement, transmitted sewage from the separated territory through sewer lines owned by the city to a treatment plant which the city also owns. The Commission has now decided it wants to transmit this sewage through its own line to its own treatment plant and brought the instant action to condemn property owned by the Railroad within the annexed area so it can build a line for this purpose.

Paragraph 5 of Section 4 of Act No. 443 grants the Commission the authority

> to acquire, construct, maintain and operate ... sanitary sewer systems or extensions to existing sanitary sewer systems, *in the said district*, and to maintain and operate the same and all existing water systems and sanitary sewer systems *lying within the territorial lines of the said district* as a corporate purpose and function of the St. Andrew's Public Service District. (Emphasis added.)

Paragraph 4 of Section 4 of Act No. 443 grants the Commission the authority

> [t]o exercise the power of eminent domain to the extent necessary to carry out the functions committed to it, the same to be exercised in the manner provided by the general laws of the State of South Carolina *for procedure* by any county, municipality or authority organized under the laws of this State, or in any other manner provided by law. (Emphasis added.)

In South Carolina, municipalities have the right to condemn property outside their corporate limits. *See* Section 5-7-50, Code of Laws of South Carolina, 1976.

The Commission argues that paragraph 4 of Section 4 of Act No. 443, when read together with Section 5-7-50 of the Code, gives it the authority to exercise the power of eminent domain over property outside its territorial limits. We reject this argument.

The power of a sovereign to take private property for a public use has existed at least since the days of the Romans.[3] However, a political subdivision of a state, not being a sovereign itself, has no inherent power of eminent domain and may not exercise the power except pursuant to a grant by the legislature. *See* 1A J. Sackman, *Nichols on Eminent Domain* § 3.22 at 3-103 (Rev. 3d. ed. 1985) (quoting *City of Cincinnati v. Vester*, 281 U. S. 439, 50 S. Ct. 360, 74 L. Ed. 950 (1930), *aff'g*, 33 F. (2d) 242 (6th Cir. 1929) ); *cf. Tuomey Hospital v. City of Sumter*, 243 S. C. 544, 548, 134 S. E. (2d) 744, 746 (1964) ("[M]unicipal corporations have no inherent right of eminent domain."). "The legislative grant of the power of eminent domain must be strictly construed for the protection of private property rights." *Id.* at 548, 134 S. E. (2d) at 746.

Strictly construed, paragraph 4 Section 4 of Act No. 443, gives the Commission only the authority to exercise the procedure used by municipalities in condemning land and does not give it the authority to exercise the substantive right of condemning property outside its territorial limits. A statute which merely sets forth a mode of procedure will not implicitly grant the power of eminent domain. 1A J. Sackman, *supra*, § 3.213, at 3-84 (quoting *Harrell v. Southeastern Pipe-Line Co.*, 190 Ga. 709, 10 S. E. (2d) 386 (1940) ).

Furthermore, paragraph 5 of Section 4 of Act No. 443 expressly limits the authority of the Commission to acquiring and constructing lines only within its territorial limits.

---

[3] The Roman scholar and historian Cornelius Tacitus reported a case involving the exercise of this power by the Emperor Tiberius in the first century A.D.:

> [T]he senator Pius Aurelius complained that his house had been undermined by the construction of a public road and an aqueduct, and appealed to the Senate. Treasury officials resisted the claim. But the Emperor came to his help and paid him the value of his house; indeed, he never minded laying out money in a good cause, a virtue he retained long after he had shed all others.

C. Tacitus, *The Annals of Tacitus*, I, p. 75, at 57-58 (D. Dudley trans. 1966).
Perhaps the earliest case of a sovereign exercising the power of eminent domain is reported in the Bible. *See* 1 *Kings* 21:1-15 (where Jezebel had Naboth, the Jezreelite, stoned to death so her husband, King Ahab of Samaria, could take possession of his vineyard).

The implied grant of authority argued for by the Commission under paragraph 4 cannot prevail in the face of the express limitation of its authority provided by paragraph 5.

In support of its argument for an implied grant of authority, the Commission cites *Valevais v. City of New Bern*, 10 N. C. App. 215, 178 S. E. (2d) 109 (1970); *City of Charlotte v. Heath*, 226 N. C. 750, 40 S. E. (2d) 600 (1946); *Town of Palm Beach v. City of West Palm Beach*, 239 So. (2d) 835 (Fla. App. 1970); *Norton Realty & Loan Co. v. Board of Education of Hall County*, 129 Ga. App. 668, 200 S. E. (2d) 461 (1973); *Town of Lakeside Park v. Crescent Park*, 244 S. W. (2d) 452 (Ky. 1951); *City of Ash Grove v. Davis*, 418 S. W. (2d) 194 (Mo. App. 1967). Even though these cases from other jurisdictions are not binding on us, we have examined them and find they are distinguishable from the instant case in that all of these cases involve statutes which expressly grant the authority to condemn land outside territorial limits.[4]

For these reasons, the order of the Circuit Court is

Affirmed.

GARDNER, and BELL, JJ., concur.

---

[4] *City of Charlotte v. Heath* involves statutes which "expressly confer the power of extra-territorial condemnation." 226 N. C. 750, 756, 40 S. E. (2d) 600, 605 (1946). The same statutes are involved in *Valevais v. City of New Bern*, 10 N. C. App. 215, 178 S. E. (2d) 109 (1970). *Town of Palm Beach v. City of West Palm Beach* involves a statute which expressly authorized the municipality to construct "a sewage disposal system or systems, either within or without or partly within and partly without the corporate limits of the municipality" and to acquire such lands as it may deem necessary for this purpose "either by purchase or the exercise of the right of eminent domain." 239 So. (2d) 835, 837 (Fla. App. 1970). A statute containing essentially the same language is involved in *Norton Realty & Loan Co. v. Bd. of Educ. of Hall County*, 129 Ga. App. 668, 200 S. E. (2d) 461 (1973). *Town of Lakeside Park v. Crescent Park* involves statutes which authorized the municipality to build a sewer system "within or without the corporate limits" and "to condemn a right of way within or without its limits as may be necessary to complete the system." 244 S. W. (2d) 452, 453 (Ky. 1951). *City of Ash Grove v. Davis* involves a statute which provided that the municipality could acquire the right to use land in connection with a sewer system "by condemnation, if necessary, regardless of whether the land was inside or outside the corporate limits." 418 S. W. (2d) 194, 205 (Mo. App. 1967).