[S. F. No. 250.    Department One.—April 7, 1896.]

B. W. GEURKINK ET AL., APPELLANTS, *v.* CITY OF PETALUMA ET AL., RESPONDENTS.

STREETS — ABUTTING OWNER — CHANGE OF WATERCOURSE — INJUNCTION —COMPENSATION.—An abutting owner upon a street of a city, whether he owns the fee in the street or has only an easement for its use, may enjoin the city from so changing a natural watercourse as to damage his property by preventing a free access to and use thereof, unless compensation for such damage is first made to, or paid into, court for him.

ID.—JOINDER OF PARTIES.—Several abutting owners, whose respective lots would be similarly damaged by the threatened change of the watercourse, may join in an action to enjoin the change; but, in order to recover damages, they must sue separately.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order refusing a new trial. R. F. CRAWFORD, Judge.

*Lippett & Lippett,* for Appellants.

*J. P. Rodgers,* and *W. B. Haskell,* for Respondents.

GAROUTTE, J. — This is an action for a permanent injunction against the city of Petaluma, brought by two owners of lots abutting upon Eighth and G streets of that city, respectively. Relief was denied them in the trial court, and this appeal comes to us from the judgment, and also from an order denying a motion for a new trial.

The facts material to a consideration of this question may be succinctly stated as follows: Edwards creek has been from time immemorial a natural water channel passing over Eighth street, and thence across the city to tide water. Some few years past, the city blocked the channel of this stream where it crossed Eighth street, and attempted to take care of its waters by a sewer leading from this point down F street. During heavy rains this sewer proved entirely inadequate to carry the waters coming from the mountains via this stream, and F street was flooded as the result, the natural fall of the land tending that way. The plaintiffs' property was situated a block or more distant and east from the point of obstruction, Geurkink's lot being upon Eighth street and facing north, and the lot of his coplaintiff facing east upon G street. The land covered by Eighth street between F and G streets was higher than at the point where the sewer connected with the stream, and, if any water ever did pass over Eighth street to G street prior to the time when the work of the city here complained of was inaugurated, the amount was slight, for, as we have seen, the lay of the land forced it north down F street.

Under the conditions just stated the city of Petaluma, by its board of trustees, adopted a scheme to take care of the waters coming from this creek which could not be carried away by the aforesaid sewer. This scheme included the enlargement of a culvert at F and Eighth streets, the digging of a large gutter or channel upon

the south side of Eighth street to G street, a culvert across Eighth street at this point, and a gutter channel down G street upon the west side thereof to Seventh street. The work mapped out by this scheme was in active operation when the plaintiffs began the present litigation, and a temporary restraining order was issued. These facts cannot be disputed by the record, and neither can it be successfully disputed that, from the evidence, the completion of the scheme would result in great damage to plaintiffs' property.

The facts being plainly outlined before us, the application of the law to these facts is not difficult, and, at the outset of this investigation, it must be borne in mind that the principles of law appertaining to waters in natural channels are different to a considerable degree from those applicable to the control of surface waters. That a city has much greater powers and less liabilities respecting surface waters than it has respecting highways of natural channels cannot be questioned. Reduced to its smallest compass, the fact is that the city of Petaluma is engaged in changing the natural course of the waters of Edwards creek, and such change, if made, will damage the property of these plaintiffs by preventing a free use of the same. Is defendant liable for such action upon its part, and is the proceeding of injunction by a court of equity the proper remedy? When this work has been completed, and the damage actually done, there can be no question but that a remedy at law for such damages could be invoked. Abutting owners have a right to the full use of the street for the purpose of coming and going to and from their property, and any unlawful interference with that use is a trespass upon the rights of such owners, whether that interference be occasioned by an individual, a corporation, or the municipality itself.

It is said in *Eachus* v. *Los Angeles Ry. Co.*, 103 Cal. 614: "The right of the owner of a city lot to the use of the street adjacent thereto is property, which cannot be taken from him for public use without compensation;

and any act by which this right is impaired is to that extent a damage to his property. . . . . Such easement is a right of property incident to the lot itself, and any damage sustained by the owner in its destruction or impairment is a damage peculiar to himself, and independent of any damage sustained by the public generally. For the purpose of determining this damage it is immaterial whether he has a fee in the street, or only an easement for its use. In either case it is property for an injury to which he is entitled to relief." (Citing cases. See, also, *Bigelow* v. *Ballerino*, 111 Cal. 559.)

Respondent also insists that compensation to an abutting owner by the city for an interference in the use of the street need not be made before the damage has taken place. But article I, section 14, of the constitution expressly provides that compensation must be first made or paid into court for the owner; and, in the Ballerino case last cited, this court said: " But, where there is no such benefit, the property owner may rest secure in the protection which the constitution affords him, that his property shall not be taken or damaged without compensation first made. It is not incumbent upon him to demand that the authorities shall respect his rights. The duty is theirs to work no unlawful invasion of them"; and again: "It would matter little whether the authorities first compensated the property owners, and then declared the alley closed, or first declared it closed and then made compensation, provided it be distinctly understood that, in the latter case, which is the case at bar, no rights attach or are lost, no invasion of the property rights of a nonconsenting owner may be worked, and no substantial impairment of his easement result, until compensation has been made to him in the constitutional mode."

It is also claimed that injunction is not the proper remedy, but, in view of what has already been said, that remedy fits the case. A threatened permanent injury to a party's realty may be enjoined, and such is this case, as disclosed by the record. In *Brown* v.

*Seattle,* 5 Wash. 44, it is held that injunction is the proper remedy in a like case, and the court, in speaking to that point, said: " We can foresee many difficulties, and perhaps much litigation, likely to ensue from the faithful enforcement of our constitutional requirement that damages be first paid; but we have no choice in the matter, and these difficulties, as well as many others, must be met and dealt with as they arise. It will not be every case, in which the property owner deems himself likely to be injured, that will justify an injunction, and the courts of the state will undoubtedly do their duty in this particular and grant no preliminary restraining order or injunction until it is made to appear with legal probability or certainty that damages will be incurred by the grading of the streets." Until compensation was made the city had no right to damage the plaintiffs' property. Payment of such damage was a condition precedent to the creation of the right; and, until payment, the city was a trespasser. In such a case injunction is the plain, ordinary, and best remedy. (See *Schaufele* v. *Doyle,* 86 Cal. 187.)

A demurrer was filed to the complaint upon the ground of misjoinder of parties plaintiff and misjoinder of causes of action. As the case is returned to the lower court for a new trial, it becomes proper to suggest that the demurrer should have been sustained. As to the relief sought by injunction the plaintiffs were properly joined, but as to damages there was a misjoinder. If damages are sought for the acts of defendants the plaintiffs must sue separately. (*Foreman* v. *Boyle,* 88 Cal. 290.)

The judgment and order are reversed and the cause remanded, with leave to the plaintiffs to amend their complaint as they may see fit.

Harrison, J., and Van Fleet, J., concurred.