(December 31, 1903.)

AXTELL v. NORTHERN PACIFIC RAILWAY COMPANY.

[74 Pac. 1075.]

MASTER AND SERVANT—TORTS OF SERVANT—INSTRUCTIONS—HEARSAY EVIDENCE—ACTS OF GOD.

　　1. The giving of conflicting and contradictory instructions upon a material question to be considered by the jury is error, and ground for reversal.

　　2. An instruction telling the jury that the master is liable for the wrongful acts of his servants if done in the course of their employment ''even though the master did not authorize

or did not know of such acts, or may have forbidden them," examined, and *held* erroneous and not correctly stating the law applicable to this case.

3. In an action against a railroad company for the wrongful acts of its employees, it must be shown that the person committing the injury was the employee of the company; and the difficulty of making the proof cannot obviate the necessity of doing so, although it may permit of slighter evidence than otherwise might be required.

4. Statements made by a person not shown to be an agent or employee of the party against whom such statements are sought to be introduced are incompetent and inadmissible unless such employment or agency be shown.

5. The following question held incompetent and improper to prove damages: "What estimate do you place upon the damages that were caused you by being thrown out of a home; that is, apart from the value of your property?"

6. No liability attaches to anyone for damages sustained by reason of the acts of God and the forces of nature; but one who by his wrongful acts augments, diverts or accelerates those forces in such a manner as to injure another is liable in damages therefor.

(Syllabus by the court.)

APPEAL from the District Court, Kootenai County. A. E. Mayhew, Judge.

Action by Joseph Axtell against the Northern Pacific Railway Company. Judgment for plaintiff. Defendant appeals. Reversed.

H. M. Stevens and John M. Bunn, for Appellant, cite no authorities that are not cited in the opinion.

Charles L. Hietman, for Respondents, cites no authorities.

AILSHIE, J.—This action was commenced by the plaintiff, Joseph Axtell, in the district court in and for the county of Kootenai, on the twenty-first day of October, 1902, for the recovery of $1,200 damages suffered by the plaintiff on account of the loss of his house, household goods, furniture, wearing apparel, barn, woodhouse, outbuildings, tools, implements, vegetables and growing crops. Plaintiff alleges that on the night of July 4, 1902, a great and unusual rainstorm took place on the headwaters of Strong creek in Kootenai county, and along

the course of that creek and Pend d'Oreille lake, and that the waters of that stream spread out over the valley, and that the employees of the defendant, Northern Pacific Railway Company, under employment and direction of its officers, cut timbers and brush and built a dam on one side of the stream a short distance above the house of plaintiff, and caused the waters to flow in a large volume in the direction of the buildings and premises of the plaintiff, and thereby caused them to be washed away and destroyed, and that such loss and destruction was the direct result of the wrongful acts of the defendant corporation in causing said dam to be built in the manner alleged. Defendant denied all the material allegations of the complaint, and upon these issues the case went to trial; and upon the twenty-third day of December, 1902, the jury returned a verdict in favor of the plaintiff in the sum of $300, and thereupon judgment was entered accordingly. Defendant moved for a new trial, which motion was by the court overruled, and defendant appealed to this court.

We will first consider the contention of the appellant that the instructions given by the trial court were contradictory and inconsistent, and therefore misleading and confusing to the jury. It appears from the record that the only instructions given in the case were those asked by the plaintiff and defendant. Plaintiff requested five separate instructions, all of which were given by the court. Defendant requested the court to give eight separate instructions, and the court gave all the instructions requested by defendant, except its request No. 1, which was a peremptory instruction to the jury to return a verdict in favor of the defendant. Instructions numbered 2 and 3 requested by plaintiff and given by the court are as follows:

"2. The court instructs you that the master or employer is severally liable for the wrongful acts of his servants or employees, whether of omission or commission, or whether fraudulent or deceitful, if done in the course of his employment, even though the master did not authorize or did not know of such acts, or may have forbidden them.

"3. The court instructs you that where a tort or wrong is committed by an agent or employee in the course of his em-

ployment, and while pursuing the business of his employer, the employer will be liable for the damages resulting from the wrongful act, although it is done without the employer's knowledge or consent, unless the wrongful act is a willful departure from such employment."

Appellant's counsel argue with much force and reason that these instructions are in direct conflict with instructions 6 and 7 requested by defendant and given by the court, which are as follows:

"6. The defendant in this case denies that any of its employees caused plaintiff's damage. In this respect, I instruct you that the plaintiff must show by a preponderance of the evidence that the defendant or its employees caused or contributed to the damage of the plaintiff; and the plaintiff must not only show that these men were in the employ of the railway company, but he must also show, by a preponderance of the evidence, that in so doing these men were acting within the lines of their employment.

"7. Even if you should find from the evidence that certain so-called Japs, or any of the employees of the defendant railway company who were working for the company as sectionmen or trackmen, did cause or contribute to plaintiff's damage, still you cannot hold the defendant liable in this case unless you should further find that the said Japs or trackmen were directed or instructed to do such work by the railroad company, or its authorized foreman, or other representative in charge."

It is only necessary to read these four instructions to be convinced that there is something wrong with some of them. In one instruction the court told the jury that the master would be liable even though he "did not authorize or did not know of such acts, or may have forbidden them." In another instruction he tells the jury that "the plaintiff must not only show that these men were in the employ of the railway company, but he must also show by a preponderance of the evidence that in so doing these men were acting within the lines of their employment." And this instruction is followed by another saying: "You cannot hold the defendant liable in this case unless you should further find that the said Japs or trackmen were

directed or instructed to do such work by the railway company, or its authorized foreman, or other representative in charge." It is apparent from these instructions that the nearest the jury could possibly comply with them would have been to return no verdict at all. They were told in one breath that they might find against the defendant even though the acts complained of had been committed in direct violation of the instructions of defendant. In the next breath they were told that they could not find for the plaintiff unless they should first find that the men who committed the act were in the employ of the defendant, acting under its direction and instructions. It was error to give such conflicting and contradictory instructions to the jury, and for this reason alone this case must be reversed. This court held that the giving of contradictory instructions was ground of reversal in *Holt v. Spokane & P. Ry. Co.,* 3 Idaho (Hasb.), 703, 35 Pac. 42. (See cases there cited; also *Giffen v. City of Lewiston,* 6 Idaho, 231, 55 Pac. 545.)

Instruction No. 2 requested by the plaintiff does not correctly state the law, and should not have been given. We do not understand it to be the law, in such cases as this, that the master is liable for the wrongful acts of his servants when those acts have been expressly forbidden by the master. If, as contended by plaintiff, the persons who committed the wrong complained of in this action were the employees of the defendant, they were, according to plaintiff's theory, section hands, whose business it was to work on and about the defendant's railway track and right of way; and, if that be true, it must be conceded that they were out of and beyond the usual line of their employment when committing the acts complained of by the plaintiff. The evidence shows that they were more than six hundred feet up the stream, and beyond the outermost limit of defendant's right of way.

It is contended, however, by counsel for defendant, that there was not sufficient evidence produced upon the trial to show that these workmen were employees of the railway company, and we think that contention is correct. The only evi-

dence tending to show the employment of these men is by the plaintiff himself. Upon direct examination he says: "They were Japs employed by the Northern Pacific Railway Company. I know they were employees of the Northern Pacific, because they were the laborers who dug out the gravel, and I was acquainted with the 'bookman' or Japanese foreman who kept the books for the Japanese. I do not know his name, but took him to be a foreigner of some kind, and he was a white man." Upon cross-examination the witness said: "Nobody told me they were working for the railway company. The reason why I say that they were working for the railroad is because I had seen them working upon the railroad, and that is my only reason for saying that they were employed by the railroad." On redirect examination the witness said: "I think they worked on the railroad for about a month two years ago, and again about a year ago. They were then taking out gravel, and the next day after the flood they worked down on the road, clearing out brush from under the bridge." This is all the evidence in the record tending to establish the employment of the men plaintiff claims committed the acts of which he complains. It is contended by counsel for plaintiff that this evidence is sufficient, and that it is next to impossible to prove the employment of laborers by a corporation like defendant. This may be, in a measure, true; but if these Japanese were in fact the employees of the railroad company, plaintiff can certainly establish that fact by competent evidence. It could certainly be proven by some officer or employee of the company, if they were the company's servants. It would seem that that fact could be proven by some of the men themselves, or other competent evidence. But the difficulty of making the proof cannot entirely obviate the necessity of doing so, though it may permit of slighter evidence than otherwise might be required.

Appellant complains of the action of the court in permitting the witness Blossom to testify to a conversation he had with a man who was with this gang of Japanese, and who, as the witness put it, was "standing around with his hands in his pockets." It is contended that this evidence was hearsay,

immaterial, and in no way binding upon the defendant. In view of the fact that this man, presumably a foreman of the gang, was not shown to be in the employ of the defendant, or in any position to bind it by his statements, the evidence was certainly inadmissible.

Appellant complains of the action of the trial court in permitting the plaintiff to answer the following questions: "What estimate do you place upon the damages that were caused you by being thrown out of a home; that is, apart from the value of your property?" This was not the proper way to show damages. The plaintiff, if entitled to recover, should have shown the character and value of the property destroyed, and from those facts the jury could fix the amount to be allowed. He could not recover for having to live on the "charity of neighbors," as suggested by respondent.

Appellant complains of various other rulings of the court in the admission of evidence and rejection of other evidence offered, but we do not think any other rulings of the court complained of are of sufficient importance to require attention here.

It has also been contended with much persistence both upon the oral arguments and in the briefs that the damage, if any, sustained by plaintiff, resulted from the acts of God and the forces of nature, and that the defendant is not liable therefor. Since this case must be sent back for a new trial, we have thought it best to make some observations upon this point. It must be conceded that if the position of the defendant is correct, and the fact can be established upon the trial, that the damage sustained by the plaintiff is due to *vis major* and the forces of nature, then plaintiff cannot recover. On the other hand, if the plaintiff should establish by a preponderance of the evidence that the defendant, by its wrongful acts, contributed to those causes, then we think it would be liable. The defendant cannot be held responsible for the destruction of plaintiff's property by the floods poured out by nature; but if while those floods are raging the defendant, by its unlawful acts, dams up the streams and means of escape for those waters, and thereby causes them to break over the banks and wash

away and destroy the property of the plaintiff, we think the defendant would be liable.

It results from the foregoing conclusions that the judgment of the lower court must be reversed, and it is so ordered, and the cause remanded for a new trial. Costs awarded to appellant.

Sullivan, C. J., and Stockslager, J., concur.