(June 28, 1911.)

EMILIE WILLSON, Respondent, v. BOISE CITY, a Municipal Corporation, Appellant.

[117 Pac. 115.]

MUNICIPAL PROTECTION OF ARTIFICIAL WATERWAY—LIABILITY FOR NEGLIGENCE—DAMAGES BY FRESHET OR CLOUDBURST—VIS MAJOR.

(Syllabus by the court.)

1. Where a city diverts a stream of water from its natural channel and undertakes to convey the same by means of an artificial channel or canal, it should be held liable for the exercise of reasonable care and diligence in constructing a channel of sufficient size to carry the volume of water that may be reasonably anticipated

or expected to flow down the same, and for the maintenance of the same in a reasonably safe condition.

2. A municipality will not be exempt from liability for damages on account of failure to maintain a sufficient artificial channel to carry off the water of a stream that it has diverted from its natural channel, merely on the grounds that the flooding and overflow was caused by an unusually heavy rainfall or cloudburst the like of, which has not usually occurred, where it appears that a number of such rainfalls or cloudbursts have occurred in the same locality within the last preceding fifteen or twenty years.

3. A rainfall or cloudburst which has irregularly and infrequently occurred a number of times within the memory of man in a particular locality, and has caused heavy freshets in a particular stream, is a thing that can reasonably be expected to occur again, and is therefore not classed as *vis major* or the act of God, for which the law of negligence and damages does not hold any human agency responsible.

4. A heavy rainfall or cloudburst and consequent floods unprecedented and so extraordinary as to have been beyond reasonable anticipation, and such as had not been known to occur in the locality for a long series of years, is classed in law as the act of God, and no liability attaches to anyone for the damages done thereby.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

Action by plaintiff for damages sustained by reason of the flooding and overflowing of city lots. Judgment for the plaintiff and defendant appealed. *Affirmed.*

P. E. Cavaney, for Appellant.

A municipal corporation, in grading its streets, constructing gutters, sewers and other waterways, need not provide against extraordinary storms, such as are not reasonably to be anticipated, but performs its whole duty if such improvements are carefully constructed on a reasonably sufficient plan, so as to be sufficient for all ordinary seasons. (5 Thomp. Neg., sec. 5877; 2 Farnham, 1159.)

Ordinary care and skill does not require the occurrence of cloudbursts to be foreseen or guarded against, though it is known that they have many times happened, and that they

will certainly recur.     (*Central Trust Co. v. Wabash, St. L. &
P. Co.,* 57 Fed. 441.)

Notwithstanding the defendant in this case may have been
negligent, still if the storm described in the pleading was of
such overwhelming character that it would have produced the
injury independently of such negligence of the defendant,
in such case the storm would be an intervening agency, which
could not have been anticipated, and such agency becomes the
proximate cause of the injury complained of by the plaintiff,
and plaintiff cannot recover.     (*Grand Valley Irr. Co. v.
Pitzer,* 14 Colo. App. 123, 59 Pac. 420; *Siegfried v. St. Beth-
leham Ch.,* 27 Pa. Sup. Ct. 456; *Thomas v. Birmingham Canal
Co.,* 49 L. J. Q. B. 851, 45 J. P. 21; *Schmidt v. Mitchell,* 84
Ill. 195, 25 Am. Rep. 446.)

A municipal corporation is not an insurer, and if it takes
reasonable precaution to have the passageway sufficient by
the employment of competent engineers, it will not be liable
for honest mistake of judgment.     (*Ross v. Madison,* 1 Ind.
281, 48 Am. Dec. 361; *Evansville v. Decker,* 84 Ind. 325, 43
Am. Rep. 86; *Haynes v. Burlington,* 38 Vt. 350; 1 Farnham,
361.)

A municipal corporation is not bound to anticipate extra-
ordinary floods, but must provide for that which must reason-
ably be expected to occur.     (*Madison v. Ross,* 3 Ind. 236, 54
Am. Dec. 481; *Evansville v. Decker,* 84 Ind. 325, 43 Am. Rep.
86; 1 Farnham on Waters, 362, 363.)

A municipality in constructing and caring for its sewers
is bound to use only the care and skill which a reasonably
prudent person would exercise.     It is not liable for injuries
from accidents or acts of God, nor for injuries which are
caused by an unprecedented rainstorm or flood.     The measure
of its liability in this regard is to provide for such floods as
may have been reasonably expected, judging from such as
have previously occurred, although they may have been at
wide and irregular intervals of time.     (*Willson v. Boise City,*
6 Ida. 391, 55 Pac. 887; *Axtell v. Northern Pac. R. Co.,* 9 Ida.
392, 74 Pac. 1075; *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378;

*Chicago v. Rustin,* 99 Ill. App. 47; *Haney v. Kansas,* 94 Mo. 334, 7 S. W. 417.)

Hawley, Puckett & Hawley, for Respondent.

This court, in a case where the present litigants were the parties, held the city liable for damages caused by the water and sand of Cottonwood creek overflowing the banks of the same flume that is now in question. (*Willson v. Boise City,* 6 Ida. 395, 55 Pac. 887.)

This decision, while it needs no support to make it the law of this case, has support in later authorities. (Farnham on Water Rights, pp. 1490, 2569.)

The question of the city's responsibility for Cottonwood flume might be said to be *res adjudicata,* for while the identical damage is not here concerned that was concerned in the former case referred to, still the main point of responsibility is identical. (*Hilton v. Stewart,* 15 Ida. 150, 128 Am. St. 48, 96 Pac. 579, 18 L. R. A., N. S., 886; *Elliott v. Porter,* 6 Ida. 684, 56 Pac. 360; *Kester v. Schuldt,* 11 Ida. 663, 85 Pac. 974; *Shephard v. Coeur d'Alene Lbr. Co.,* 16 Ida. 292–295, 101 Pac. 591; *Keane v. Pittsburg Lode Min. Co.,* 17 Ida. 179–192, 105 Pac. 60.)

One who pleads the act of God must show that his negligence did not contribute as a proximate cause to the act of God relied upon as a defense. (10 Current Law, 1093.)

"One must provide against such acts of God as may be reasonably anticipated, and one may be liable for the results of negligence notwithstanding an act of God concurred in producing them." (*Carhart v. State,* 115 App. Div. 1, 100 N. Y. Supp. 499; *Gulf etc. Co. v. Boyce,* 39 Tex. Civ. App. 195, 87 S. W. 399; 10 Current Law, 1025; *Mahaffey v. Company,* 61 W. Va. 571, 56 S. E. 893, 8 L. R. A., N. S., 1263; *Birsch v. Citizens' Elec. Co.,* 36 Mont. 574, 93 Pac. 940; *Goe v. N. P. R. Co.,* 30 Wash. 654, 71 Pac. 182.)

The term "act of God," in its legal sense, applies only to events in nature so extraordinary that the history of the climatic variations and other conditions in the particular locality afford no reasonable warning of them. (*Gulf Red Cedar Co.*

*v. Walker,* 132 Ala. 553, 31 So. 374; *Ryan v. Rogers,* 96 Cal. 349, 31 Pac. 244; *Polack v. Pioche,* 35 Cal. 416, 95 Am. Dec. 115; *Smith v. Western R. R. of Ala.,* 91 Ala. 455, 24 Am. St. 929, 8 So. 754, 8 L. R. A. 619; *Los Angeles Scale etc. Co. v. Los Angeles,* 103 Cal. 461, 37 Pac. 375; *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378; 1 Cyc. 758; *Kuhnis v. Lewis River etc. Co.,* 51 Wash. 196, 98 Pac. 655.)

Where human agency contributes to the act of God or *vis major,* then it is no defense. (*Benedict Pineapple Co. v. Atl. C. Line R. Co.,* 55 Fla. 514, 46 So. 732, 20 L. R. A., N. S., 92; *Booker v. Southwest Mo. R. Co.,* 144 Mo. App. 273, 128 S. W. 1012; *St. Louis S. W. R. Co. v. Mackey* (Ark.), 129 S. W. 78; *Buel v. Chicago R. I. & P. R. Co.,* 81 Neb. 430, 116 N. W. 299; *Kansas City v. King,* 65 Kan. 64, 68 Pac. 1093.)

The burden of proving an unprecedented flood as an act of God is upon the defendant. (*Jones v. Seaboard Air Line R. Co.,* 67 S. C. 181, 45 S. E. 188; 5 Ency. Law, Supp. 30, par. 579.)

Injury and loss can never be attributed to the act of God if in any fair view of the evidence it can be held to be due to the act of man. (*Georgia S. & F. R. Co. v. Barfield* (Ga. App.), 58 S. E. 236; *Richards v. City of Ann Arbor,* 152 Mich. 15, 115 N. W. 1047.)

AILSHIE, Presiding J.—This action was instituted by the plaintiff against Boise City to recover damages caused by flooding and overflowing her property and the property of twenty others whose claims for damages had been assigned to the plaintiff.

It appears that on about the 19th of June, 1909, a heavy rainfall, or what is commonly called a cloudburst, occurred in the foothills east of Boise City and in the vicinity of what is known as Cottonwood canyon. As a result a large body of water collected in the Cottonwood creek and carried a great quantity of sand, gravel and debris down the stream and deposited it on the town lots of the plaintiff and her assignors, doing great damage to the lots and flooding cellars and causing damage to the persons whose lots were flooded. It ap-

pears that in the early settlement of Boise City this stream in its natural course flowed down through what is now embraced in the lands of the Boise Barracks, and thence through the center of the present city and in the vicinity of the Capitol Building. This resulted in flooding and overflowing large tracts of land during the high-water season and at times of heavy rainfall, and so the city finally concluded to divert the course of the stream from the mouth of the canyon, and accordingly built what is designated as the "Cottonwood flume," carrying the water almost in a southerly direction from the mouth of the canyon to the Boise river. This resulted in diverting the entire flow of the stream from its original course as it formerly left the mouth of the canyon and carries the water through a territory that had not previously been affected by the flow of the stream. It seems that at first the retaining walls along the east side of the military reserve were not built high enough to retain the water and prevent it overflowing the military reserve at times of extraordinary high water, and so the government caused the wall to be erected higher and in a more substantial manner for some distance along the government property, thus holding the water and carrying it past the reserve. From thence to the Boise river the water is carried through a canal that is walled up on each side by substantial stone walls. The lots belonging to the plaintiff and her assignors lie on the east side of this canal. It seems that the canal is only large enough to carry the stream of water at ordinary high water, but is not large enough to carry off the volume of water that comes down the stream at extreme high water or at times of cloudbursts or extraordinary heavy rains. Many years ago the city caused a dam to be constructed across the Cottonwood creek at the mouth of the canyon, and immediately above the government retaining wall, for the purpose of causing an eddy in the stream and precipitating the large volume of sand that comes down the stream so as to prevent the greater quantity of the sand being carried into the canal. This dam was not a permanent or substantial structure. It appears that it had been constructed in a rather careless and negligent and temporary

manner.   When the heavy rain or what is termed a cloudburst occurred in June, 1909, this dam was carried out, and with it large volumes of sand, silt and debris were swept along by the flood and precipitated upon the lots of the plaintiff and her assignors.

There is no dispute in this case but that the injury and damage complained of was committed.   The city does not dispute the fact that the lots were flooded and debris and sand deposited thereon, and the cellars and other excavations were flooded.   It is insisted, however, by the city that it is not liable for this occurrence, and this contention is based upon the fact that it claims this was an unprecedented and unusual flood, and that it therefore falls within that class of occurrences which are attributed to *vis major* or act of God, for which there is no human responsibility.   There is no occasion for citing or reviewing authorities to the effect that no responsibility attaches to the city if this act can be termed an act of God.   This court has twice had occasion to so hold on similar questions.   (*Axtell v. Northern Pacific R. Co.,* 9 Ida. 392, 74 Pac. 1075; *Lamb v. Licey,* 16 Ida. 664, 102 Pac. 378.)

The decisive question, however, arises in this case as to what constitutes *vis major* or the act of God within the meaning of the law of negligence.   Black, in his Law Dictionary, defines it thus: "Any misadventure or casualty is said to be caused by the 'act of God' when it happens by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention, and is of such a character that it could not have been prevented or escaped from by any amount of foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the party might reasonably require him to use."

The English court in *Nitrophosphate etc. v. London etc. Docks Co.,* L. R. 9, Ch. Div. 516, said: "To say that the thing could not reasonably have been anticipated is to say that it was the act of God."

The supreme court of Alabama in *Smith v. Western Ry.,* 91 Ala. 455, 24 Am. St. 929, 8 So. 754, 11 L. R. A. 619, in con-

sidering the liability of a railroad company for damages caused by heavy floods, gave the following definition: "While it is true that no human agency can prevent or stay an act of God, the act itself being that of omnipotence, and irresistible, it is frequently the case that the results or natural consequences of an act of God, by the exercise of reasonable foresight and prudence, may be foreseen and guarded against. Where this can be done by the exercise of reasonable diligence and prudence, the failure to do so would be negligence, and subject the party upon whom this duty devolved to damages, although the original cause was an act of God."

In *Gulf Red Cedar Co. v. Walker*, 132 Ala. 553, 31 So. 374, the court said: "The term 'act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of the climatic variations and other conditions in the particular locality affords no reasonable warning of them, and where injuries were caused by floating by a lumber company during a flood, damages could not be avoided on the grounds that the flood was an act of God, where from geographical and climatic conditions, the flood might have been anticipated, though it occurred infrequently."

In *Kansas City v. King*, 65 Kan. 64, 68 Pac. 1093, the supreme court of Kansas was considering the liability of the city for damages caused by flooding on account of the inadequacy of a sewer to carry off the flood waters. The court said:

"It is true that the flood of 1892 may be said to have been an unusual one, but, although unusual, it was such as had occasionally occurred, and which the city should have anticipated and provided against. The testimony shows that such floods had occurred at irregular intervals, and that they would again occur might reasonably have been expected. It is true that floods unprecedented and so extraordinary as to have been beyond reasonable anticipation are not to be provided against, but, while floods like the one which occasioned the injury were of rare occurrence in that vicinity, they had occurred so often in the past as to warrant the belief that the region was subject to them, and that, under the laws of nature, they would occur again. Ordinary care and foresight, therefore,

required the city to provide against floods which were or should have been anticipated, and floods were shown to have occurred so frequently that those who constructed the sewers should have anticipated floods like that of 1892, and should have guarded against them by placing flood gates at the mouths of the sewers.''

In *Ohio & Mississippi Ry. Co. v. Ramey*, 139 Ill. 9, 32 Am. St. 176, 28 N. E. 1087, the court was considering the liability of a railroad company for obstructing the flow of water in a stream by means of an embankment, thereby overflowing adjoining lands in time of unusual or extraordinary flood. The court said:

''The principle clearly is, that although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and, it may be, at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this state, that our streams are occasionally subject, after intervals which are sometimes of shorter and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary,—i. e., they were extraordinary; and yet it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they are produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal, and therefore beyond reasonable anticipation, and it is hence but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question, then, is not whether appellant has sufficiently provided for the escape of water of ordinary floods, but has it provided for the escape of the water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally

occurred after intervals, though of irregular duration, in the past." (See *Gulf, C. & S. F. Co. v. Boyce,* 39 Tex. Civ. App. 195, 87 S. W. 395; *Central Trust Co. v. Wabash, St. L. & P. Ry. Co.,* 57 Fed. 441; *Mahaffey v. Rumbarger Lumber Co.,* 61 W. Va. 571, 56 S. E. 893, 8 L. R. A., N. S., 1263; *Hyman v. Hauff,* 138 N. Y. 48, 33 N. E. 735.)

In the case at bar, the city, in the first place, as a municipality, was not obliged to divert the flow of Cottonwood creek from its original natural channel through the city. It had the power, however, to do so. (*Willson v. Boise City,* 6 Ida. 391, 55 Pac. 887.) Having exercised that power and diverted the stream from its original channel, and thereby saying to the residents along the original channel and course of the stream, "You now may build up and improve your property; the municipality will carry the water of this stream in another direction," it can no longer turn those waters loose in the original channel or course of the stream. The municipality has undertaken to control and direct the flow of the waters of this stream. It has done that presumably for the benefit of the whole community. Since it has assumed the control and direction of the stream, it cannot turn its water loose upon other property owners and flood and damage them without also assuming a responsibility for such damages as may be sustained by the property owners on account of the negligence, or rather want of proper care and diligence upon the part of the city in providing for, directing and controlling the flow of such stream. It is argued by the city that the intervening act of the United States in erecting the retaining wall and preventing the water spreading out over the military reserve, and thus throwing the entire volume of water in the direction of the canal and respondent's premises, was the proximate cause of the injury, and that the city is therefore not liable. The weakness of this contention lies in the fact that the city had already assumed responsibility for the diversion of the stream from its natural channel, and it owed the same duty to the people along the original channel to prevent the water thereafter flowing in that direction as it owed to the people along the artificial channel to protect them by the exer-

cise of ordinary care and diligence to prevent the flooding and overflowing of their lands. The fact that a property owner repaired the wall so as to protect his property does not relieve the city of the primary duty which rested on it and which it owed to all the people.

This question arose between the same parties in *Willson v. Boise City,* 6 Ida. 391, 55 Pac. 887, and the court held that the city was guilty of negligence in not constructing and maintaining a canal of sufficient size to convey the waters of Cottonwood creek from the mouth of the canyon to the Boise river in times of high water. The court there announced what we conceive to be the correct rule as laid down in the last paragraph of the syllabus as follows: "One who purchases land and improves the same on the line of an artificial waterway constructed by a municipal corporation may well rely upon such municipal corporation to perform the duty that it is under, of keeping such artificial waterway in repair and condition to carry all of the waters that may flow therein from usual and ordinary causes, and may recover damages received by the negligent flooding of his lands by waters from such artificial waterway."

Returning again to the facts of this case, it appears that these heavy rains or cloudbursts, such as occurred on the 19th of June, 1909, and for which damages are claimed, only occur at intervals of two, three, four or five years apart. It seems that almost every year in the spring and early summer heavy rainfalls occur in the vicinity of Cottonwood creek, and that as a consequence large volumes of water come down the stream, but these cloudbursts referred to as unusual and extraordinary do not occur every year, but have occurred a number of times within the last fifteen or twenty years; in other words, they have occurred with sufficient frequency within the memory of man that they cannot be classed among the phenomenal or unprecedented outpourings of nature against which the city could not have reasonably provided or which could not have been reasonably guarded against. If it appeared in this case that this was such a heavy and unprecedented rainfall as had not occurred within the memory of man, as

that term is defined by law, then certainly the city would not be liable. Such an act would properly be classed as the act of God for which there is no liability.

We are fully persuaded from the facts as they appear in the record in this case that Boise City has been negligent in maintaining this canal, and the sooner the municipality wakes up to its responsibility and duty in this respect, the better it will be for the whole people, both in their collective capacity as a municipality and their individual capacity as citizens and taxpayers. The city has undertaken the care and maintenance of this stream. It must now afford the property owner reasonable protection against the ravages of the stream in times of high water. This court in *Willson v. Boise City, supra,* twelve years ago, sounded the alarm to the city that it must take care of the waters from this stream, but the admonition seems to have gone the way of much good advice in this world, and now the city must pay in dollars and cents for what it might have reasonably prevented and protected the citizens against.

The judgment in this case should be *affirmed,* and it is so ordered. Costs awarded in favor of respondent.

Sullivan, J., concurs.