371 P.2d 842

Wayne HARPER, Plaintiff-Respondent,

v.

Erling JOHANNESEN, Defendant-Appellant.

No. 8984.

Supreme Court of Idaho.

May 31, 1962.

Gigray & Boyd, Caldwell, for appellant.

Ryan & Ryan, Weiser, for respondent.

McFADDEN, Justice.

Plaintiff (respondent here) in this action for damages caused by flooding of his premises was awarded $7,500 by the jury and judgment entered accordingly. This flooding came after a heavy rainstorm which occurred on February 8, 1960, resulting in a large body of water flowing from the drainage known as "Sand Hollow" in the southerly portion of Emmett Valley of Gem County. The defendant (appellant) appeals from the judgment and denial of his motion for new trial.

Plaintiff Harper and defendant Johannesen are owners of adjacent orchard lands. Johannesen's premises are southerly from Harper's and are upstream therefrom on the present Sand Hollow channel. When Johannesen purchased his property in 1956 there was a channel crossing his land south to north through which the Sand Hollow water flowed intermittently. This channel continued northerly (downstream), traversing the Harper lands, having been constructed about 1910. Prior thereto the waters from Sand Hollow followed the original natural drainage northwesterly over other lands, which are about a quarter of a mile southerly from the lands here involved. In 1910 the course of the drainage was changed from where Sand Hollow drainage entered the main valley by an embankment being constructed along foothills

to the lands now owned by Johannesen. It continued through the lands of these parties which at that time was still in sagebrush.

In about 1919 the then owners of these lands planted a row of trees along the westerly edge of the drainway through their respective properties. Prior to 1959 this channel primarily consisted of an embankment to the west side, on which this row of trees stood and riprapping along the west bank. There was but little embankment on the east side.

Johannesen, desiring to increase the utilization of his land, sought advice from the Soil Conservation Service. After investigation and surveying the land by this agency, a plan was adopted to replace the drainage or remake it with a so-called "seeded waterway". Johannesen spoke to Harper about the proposed change, Mr. Harper testified as follows:

"Q. Prior to 1949, did Mr. Johannesen speak to you about any action he wished to take as to this row of Poplar trees and ditch there?

"A. I don't actually recall, but I believe it was in 1958 that he informed me that he was going to take out the trees and level the ground that he might plant some more orchard there.

"Q. Did you make a response to that conversation?

"A. I objected to that, inasmuch as I knew that from past history of the runoff that it could flood if he leveled it up.

"Q. Did you tell him of that past history?

"A. I tried to."

Johannesen agreed Harper objected to the work, as far as it affected Harper's land.

The trees along the westerly bank were removed, and a portion of the old drainage leveled and a new drainway constructed, generally, along the course of the old drainway, but with a more abrupt curve. The new drainway was about 10 to 12 feet in width and about 18″ in depth.

On February 8, 1960, the day of the flooding a large volume of water flowed out of Sand Hollow, destroying a portion of a county road, displacing a large culvert, and bringing with it a large amount of debris. On defendant's premises this water overflowed the drainway, broke through the banks and continued onto plaintiff's lands, causing erosion, and depositing silt and debris on them.

Defendant's assignments of error are directed to the failure of the court to instruct the jury that before plaintiff could recover, he had to prove by a preponderance of the evidence negligence on the part of the defendant, and in further failing to define the term "negligence". Error is

likewise assigned in the court's failure to instruct that if defendant proved that the flood was an "Act of God", such would be a defense to the claim of damages. Defendant also assigns the giving of Instruction No. 4, as error, claiming portions of it improperly stated the law.

■■ Plaintiff contends that defendant, having failed to submit requested instructions covering the points now assigned as error, cannot complain of the court's failure to instruct on those points. This contention is without merit, for as later pointed out in this opinion, erroneous instructions were given. A party is under no obligation to first object to instructions given, before assigning as error the giving of such instructions, if such instructions are erroneous. IRCP 51.

The court gave, among others, the following instructions:

### "INSTRUCTION NO. 4.

"You are instructed that it was the duty of the defendant, when he chose to change the course of the drain ditch provided for flood waters from Sand Hollow across his lands, to provide a substitute channel of sufficient capacity and quality of construction to safely carry off such volume of flood waters as have from time to time come down Sand Hollow within the memory of man, as that phrase is applied to this case. If you find that defendant did provide a drain ditch sufficient to carry off such volume of flood waters as have from time to time come down Sand Hollow within the memory of man, excluding the flood of February 8, 1960 from consideration, then defendant is not liable and you must find for the defendant, because if such drain were provided, the flood of February 8, 1960 would be of such unexpected and overwhelming proportions that it could not reasonably be foreseen and guarded against, and such flood would be classified as an 'Act of God' excusing defendant from liability.

"If you find that defendant did not build a substitute drain ditch sufficient to carry off a volume at least equal to such volume of flood waters as has come down Sand Hollow within the memory of man, excluding the flood of February 8, 1960, then you must find defendant liable and award plaintiff the proper amount of damages pursuant to the instruction on damages.

"The phrase 'within the memory of man' as applied to this case means within the memory of persons who are living within the Emmett area or have lived within the Emmett area, and would mean such persons, for example, as have testified as to their recollec-

tions as to previous floods of Sand Hollow.

"Liability in such cases does not rest solely upon the narrow ground of negligence, but rather upon the broad legal principle that no one is permitted to use his own property as to invade the like property rights or cause injury or damage to the property of another.

"INSTRUCTION NO. 5

"By the term 'act of God' is meant those events and accidents which proceed from natural causes the severity or extent of which cannot be anticipated and guarded against, or resisted; such as exampled floods, storms or frosts."

Defendant contends these instructions placed an absolute liability on him, regardless of whether he was free from negligence in the construction of the new drainway. A determination of his duty to the plaintiff is essential to evaluate the merits of this contention.

■ The channel, before its change by Johannesen, had for many years been considered as a natural one accommodating the natural flow of waters emanating from the Sand Hollow watershed. The owners of the land through which the channel ran had no control as to the quantity or time of such flow, as distinguished from owners of irrigation ditches or canals which are generally under the control of human agencies as to quantity and time of flow. Defendant's property, when acquired by him, was subject to receiving the natural flow coming to his property in this channel, the same as plaintiff's property was subject to the servitude of receiving the same water continuing in the channel through defendant's property; as pointed out in Loosli v. Heseman, 66 Idaho 469, 162 P.2d 393, this servitude cannot be augmented or made more burdensome by the acts of the upper land owner. See also: Mashburn v. St. Joe Improvement Co., 19 Idaho 30, 113 P. 92, 35 L.R.A.,N.S., 824; Chandler v. Drainage Dist. No. 2, 68 Idaho 42, 187 P.2d 971; Garrett v. Beers, 97 Kan. 255, 155 P. 2, L.R.A. 1916F, 1289; 56 Am.Jur. 504, Waters § 14.

■ One who undertakes to change the course of a natural stream is under the duty of making any change in the natural channel of sufficient capacity and quality as to accommodate not only the normal flow, but also such high waters as may reasonably be anticipated from heavy and protracted rains not amounting to a *vis major*, and which the old channel was capable of carrying away without damage to neighboring property. Willson v. Boise City, 20 Idaho 133, 117 P. 115, 36 L.R.A.,N.S., 1158; Garrett v. Beers, 97 Kan. 255, 155 P. 2, L.R.A. 1916F, 1289; See also Wilson v. Boise City, 6 Idaho 391, 55 P. 887; Smith v. Big

Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146; Annotation 12 A.L.R. 187, IV at pg. 189; 36 L.R.A.,N.S., 1158; L.R.A.1916F, 1291.

▊ Whether the channel as newly constructed by Johannesen met these standards presented a factual question to be resolved by the jury. This question generally was properly presented by the first two paragraphs of Instruction No. 4, except for the use of the phrase "within the memory of man" contained in both of these paragraphs. The discussion as to the use of the phrase "within the memory of man" is treated hereinafter.

The last paragraph of Instruction No. 4, paraphrases the language appearing in Boise Development Co., Ltd. v. Boise City, 30 Idaho 675, 167 P. 1032. The language was also quoted verbatim in Lundahl v. City of Idaho Falls, 78 Idaho 338, 303 P.2d 667, 61 A.L.R.2d 866, wherein it was employed as illustrative of the proposition that municipalities have been generally held liable for negligence for activities which they are empowered, but not required, to carry out. In Boise Development Co. v. Boise City, supra, at page 690, 167 P. at page 1035, it was stated:

"Nor does the city's liability in such cases rest solely upon the narrow ground of negligence, but rather upon the broad legal principle that no one is permitted to so use his own property as to invade the property rights, or cause injury or damage to the property, of another. Dillon, Mun.Corp. (5th ed.) § 1638; McQuillin, Mun.Corp., §§ 2702, 2704; Ordway v. Village of Canisteo, 66 Hun., 569, 21 N.Y.Supp. 835; Brown v. City of Ithaca, 148 App.Div. 477, 132 N.Y.Supp. 1041; Geurkink v. City of Petaluma, supra [112 Cal. 306, 44 P. 570]; Martin v. St. Joseph, 136 Mo.App. 316, 117 S.W. 94."

An examination of the authorities cited therein indicates that the statement was employed to establish the liability of a city for activities which it is empowered, but not required, to carry out, as pointed out in Lundahl v. City of Idaho Falls, supra; Dillon, Mun.Corp., 5th Ed., § 1658, deals with the responsibility of a municipality for "Implied liability ex delicto"; McQuillin, Mun.Corp. (1913) Secs. 2702 and 2704 deals with the responsibility of a municipal corporation for obstructing water courses, and the obligations to protect the rights of riparian owners; Ordway v. Village of Canisteo, 66 Hun. 569, 21 N.Y.S. 835, deals with the question of responsibilities of a municipality as distinguished from that of an individual. Brown v. City of Ithaca, 148 App.Div. 477, 132 N.Y.S. 1041, held that a city could not escape liability on the ground that it was engaged in the performance of works of a public nature,

but it was liable if it failed to exercise due care to protect the individual's property and damages resulted therefrom. Geurkink v. City of Petaluma, 112 Cal. 306, 44 P. 570, was an action to restrain the city from changing the course of a natural stream so as to make it flow across a public street, impairing free access of abutting property, and there the Supreme Court of California held that permanent injunction should issue. Martin v. St. Joseph, 136 Mo.App. 316, 117 S.W. 94, decided by the intermediate Court of Appeals, Kansas City, while dealing with the liability of a city in creating a nuisance, was actually tried on a theory of negligence.

The quoted statement in Boise Development Co., Ltd. v. Boise City, supra, is a general, broad statement of law, with which there is no particular argument here, and which appears in that opinion as dicta, not essential to determination of the issues therein presented to the court. The issues as presented dealt with defenses dealing with res adjudicata, with the defense of statute of limitations, the defense of ultra vires acts of a municipality. The giving of such a statement, however, as an instruction by the court in this action would remove from consideration by the jury of the question whether this particular flood was caused by an "Act of God", and was not applicable to the facts here involved. It in effect narrowed the determination of the jury to simply whether plaintiff was damaged by defendant's use of his property, without any consideration being given to whether an act of God, as an unforeseeable intervening cause brought about the injury, or whether the defendant was negligent in first failing to first determine how great a flow of water such as could reasonably be expected from the previous history of the stream.

If the damage sustained by the plaintiff was due to vis major, or act of God, the plaintiff cannot recover, such being recognized in the law as a defense. Axtell v. Northern Pacific Railway Co., 9 Idaho 392, 74 P. 1075; Willson v. Boise City, 20 Idaho 133, 117 P. 115, 36 L.R.A., N.S., 1158. The term "Act of God" was properly defined in Instruction No. 5, as far as it went. It has reference to those events and accidents which proceed from natural causes and cannot be anticipated or guarded against or resisted. Rice v. Oregon Short Line R. R. Co., 33 Idaho 565, 198 P. 161; see, Johnson v. Burley Irrigation District, 78 Idaho 392, 304 P.2d 912. It was for the jury to determine whether the cause of the injury was that of an "Act of God", or whether from the defendant's actions in failing to comply with the obligations he assumed by making such a change. His obligations in that regard also encompassed the duty to make such inquiry as to the previous history of the high or flood wa-

ters on the stream as would have been made by a reasonably prudent man. After such inquiry, the defendant upon making the change in this drainway, was obligated to provide for such flow as should reasonably be anticipated. It was for the jury to determine whether the defendant was negligent or not in making such investigation required or whether he complied with this duty and complied with the further duty to provide for such a flow as should have been anticipated. If such a flow would not have been anticipated by a reasonably prudent man, then such a flood would be considered such an extraordinary flow of water as to amount to an Act of God. See, 56 Am.Jur., Waters § 91, p. 574; Wellman v. Kelley, 197 Or. 553, 252 P.2d 816; Schweiger v. Solbeck, 191 Or. 454, 230 P.2d 195, 29 A.L.R.2d 435; Town of Jefferson v. Hicks, 23 Okl. 684, 102 P. 79, 24 L.R.A.,N.S., 214. A definition of the term "negligence" thus is required for the jury to be fully instructed on the law.

■■ ■■ The use in the instructions of the phrase "within the memory of man", and its definition as meaning "within the memory of persons who are living within the Emmett area, and would mean such persons, for example, as have testified to their recollections as to previous floods of Sand Hollow", is in a sense in conflict with the other instructions defining an "Act of God." The term "within the memory of man" has reference only to persons who have lived within the community, and must be limited in its application to the competency of such persons to testify to their recollections. It was still for the jury to determine the accuracy and credibility of their testimony, and for the jury to determine whether a reasonably prudent person in the same position as the defendant was bound to discover the facts related by them and make the capacity of the drainway of such capacity as to accommodate the floods described by them. The definition given required the jury to accept the testimony of the witnesses who testified, without evaluating the weight to be accorded their recollection and without applying to it the test of what a reasonably prudent person would have done.

For the reasons pointed out, the defendant's theory of the case was not properly presented by the instructions given.

Judgment reversed and cause remanded for new trial.

Costs to appellant. Petition for rehearing denied.

TAYLOR, KNUDSON and McQUADE, JJ., concur.

SMITH, C. J., dissenting.