NATHANIEL C. HOWE *vs.* ASHLAND LUMBER COMPANY.

Aroostook.  Opinion December 11, 1912.

*Act of God.  Accumulation of Logs.  Booms.  Damages.  Burden of Proof.
Declaration.  Eminent Domain.  Jam.  Logs.  Lumbering.  Navigable
Stream.  Negligence.  Obstruction.  Overflowing.  Privileges.  Riparian
Owners.  Rainfall.  R. S., Chapter 43, Sections 7 and 8.*

1.  This case comes on report.  The facts show that the plaintiff during the period covered by his writ was the owner of a farm upon the west side of the Aroostook river, containing an intervale of about 14 acres bordering upon the river.  The defendant is a corporation operating lumber mills at a dam across the Aroostook river near the village of Ashland and about six and one-half miles down the river from the land of the plaintiff.  Bearce Island is a short distance north of the plaintiff's land.  Near the upper end of the island are erected three large piers known as the "Upper Jam Piers."

2.  The defendant for about six years has used the river exclusively for a distance of over six miles below the jam piers and about eight miles above them,. for the driving and booming of its logs coming into the river from above.  There was a large booming privilege below the piers, which during the period covered by the plaintiff's declaration, was entirely unused.

3.  The plaintiff in his writ declares that in the years 1906, 1907 and 1908 the defendant negligently allowed its logs to jam and accumulate upon the jam piers immediately north of his land to such an extent as to cause the water to overflow his intervale and deposit thereon. logs and other debris floating down the river to such a degree that he was damaged in each of these years and put to considerable expense in removing these deposits from his land. .

It is the opinion of the court that the remedy for damages for these three years, under the plaintiff's declaration, if any there were, should have been sought under R. S., Chap. 43, Secs. 7 and 8.

4.  The defendant, however, while not controverting the overflow of the plaintiff's land and the destruction of his crops by water, contends that by virtue of a special act of the Legislature it was authorized to erect at the place where located, piers and booms to collect, hold, separate and sort logs, pulp-wood and other lumber coming down the Aroostook river.

5.  The only issue, which, therefore, seems to be raised upon the law and the evidence is whether the defendant exercised reasonable care in the

execution of the privileges conferred upon it by the Legislature. There
can be no question that the defendant within the exercise of due care had
a right to use its piers and booms for all the purposes they were intended
to subserve, without liability for any damages incident to or consequent
upon the result of such act.

6. The first question accordingly is, did the defendant in allowing its logs
to drift down and accumulate upon the piers, as the evidence tends to
show they did, make a reasonable use of the privileges granted by the
Legislature. It is the opinion of the court that it did not.

7. The defendant also raised the defense of vis major or act of God,
claiming that the rain-fall was unprecedented; that the defendant was not
required to anticipate it and consequently the flood was vis major. But
this contention is not sustained by the evidence.

On report. Judgment for plaintiff for $867.00 and interest from
date of writ.

This is an action to recover damages from defendant for negli-
gently allowing its logs to accumulate and jam upon the piers to
such an extent as to cause the water to overflow the plaintiff's
intervale and deposit thereon logs and other debris and thereby
damaging his crops and putting him to expense in removing the
aforesaid deposits from his land. Plea, the general issue with brief
statement justifying its acts under Chapter 351 of Private and
Special Laws of 1897. At the conclusion of the evidence, the case
was reported to the Law Court to render such decision as the law
and such evidence as is admissible requires.

The case is stated in the opinion.

*Hersey & Barnes,* for plaintiff.

*Powers & Archibald,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING,
HALEY, JJ. CORNISH concurred in the result.

SPEAR, J. This case comes on report. The facts show that the
plaintiff during the period covered by his writ was the owner of a
farm upon the west side of the Aroostook river, containing an
intervale of about 14 acres bordering upon the river. The defend-
ant is a corporation operating lumber mills at a dam across the
Aroostook river near the village of Ashland and about six and

one-half miles down the river from the land of the plaintiff. Bearce Island is a short distance north of the plaintiff's land. Near the upper end of the island are erected three large piers known as the "Upper Jam Piers." The water space from the west shore to the first pier is 70 feet; from the first pier to the second pier, 120 feet; from the second pier to the third pier, 120; from the third to the east shore, 65 feet. The defendant for about six years has used the river exclusively for a distance of over six miles below the jam piers and about eight miles above them, for the driving and booming of its logs coming into the river from above. There was a large booming privilege below the piers, which during the period covered by the plaintiff's declaration, was entirely unused. It consisted of three miles of dead water, and was easily available for booming purposes.

The plaintiff in his writ declares that in the years 1906, 1907 and 1908 the defendant negligently allowed its logs to jam and accumulate upon the jam piers immediately north of his land to such an extent as to cause the water to overflow his intervale and deposit thereon logs and other debris floating down the river to such a degree that he was damaged in each of these years and put to considerable expense in removing these deposits from his land.

It is the opinion of the court that the remedy for damages for these three years, under the plaintiff's declaration, if any there were, should have been sought under R. S., Chap. 43, Secs. 7 and 8.

But the plaintiff further alleges in his writ that "on the first day of April, 1909, and on diverse other days and times between that day and the first day of November, 1909," the defendant carelessly and negligently allowed its logs to accumulate and jam upon these piers to the extent of causing the water to rise to an unusual height and flow back over his intervale and to remain there for so long a time as to destroy and render worthless a large field of potatoes.

The defendant, however, while not controverting the overflow of the plaintiff's land and the destruction of his crops by water, contends that by virtue of a special act of the Legislature it was authorized to erect, at the place where located, piers and booms to collect, hold, separate and sort logs, pulp-wood and other lumber coming down the Aroostook river. The act also provides that they shall

not be so constructed as to impede navigation or unreasonably obstruct the common use of the river. It further gave the defendant company the right of eminent domain to take and hold such lands as might be necessary for the location, erection and maintenance of its piers and booms. But this provision of the act is immaterial to the consideration of the question in issue. We are unable to discover from the evidence that the defendant had in any way violated the provisions of this act in the location, erection and maintenance of its piers.

The only issue which, therefore, seems to be raised upon the law and the evidence is whether the defendant exercised reasonable care in the execution of the privileges conferred upon it by the Legislature. There can be no question that the defendant within the exercise of due care, had a right to use its piers and booms for all the purposes they were intended to subserve, without liability for any damages incident to or consequent upon the result of such use. The intent and purpose of a legislative act conferring such privileges is to protect the exercise of those privileges to the full extent of the grant. This rule was stated in *Cushman* v. *Smith,* 34 Maine, 247, as follows: "When a company only does what, by its charter it is authorized to, and is free from fault and negligence, it is not liable for consequences and damages." *Boothbay* v. *Ack. Railroad Co.,* 51 Maine, 318, and *Lawler* v. *Baring Boom Co.,* 56 Maine, 443, and cases cited. From these very cases it is equally well established that there may be a negligent use of a lawful right. The decisions are numerous and varied in declaring the application of this principle of law to the use of piers and booms. It is found in *Lawler* v. *Baring Boom Co.,* supra, on page 447 in this language: "The test of exemption from liability for injury arising from the use of one's property, is said to be the legitimate use or appropriation of the property in a reasonable, usual and proper manner, without any unskilfulness, negligence or malice." In applying this general statement of the law to the specific use of a boom, the head note in this case fairly summarizes the law as follows: "A boom company, being without fault or negligence in the erecting and management of its boom, is not liable for the flowage of land not taken under its charter, caused by the boom, in co-operation of an unusual accumu-

lation of logs and a large rise of water." Stated in the affirmative way the converse of this principle is that if land not taken under a charter is flowed by the co-operation of an unusual accumulation of logs and a large rise of water through the fault or negligence of the boom company in the erection and maintenance of its booms, it is then liable for such flowage. In *Trevett* v. *Barnes,* 21 N. Y., Weeks Dig. 560, it is said: "One driving or floating logs on a navigable stream is required to exercise ordinary care to prevent the same from doing damage to the property of riparian owners." This rule is also extended to the exercise of such care as to prevent logs delivered in the streams from creating jams sufficient to cause injury. In Minnesota is found the same rule. In New Hampshire in *Water River Imp. Co.* v. *Nelson,* 45 N. H., 578, it is *held:* "When logs are allowed to form jams, and cause flowage more than would otherwise exist, the person or company driving the logs is liable for damages to lands or crops resulting from such excessive flowage when want of ordinary care is shown in not breaking up the jam." It is unnecessary to multiply quotations. In every state in the union where lumbering operations have been made and floatable streams driven, this rule of law touching the negligent use of a lawful right has been declared. But the defendant, while not controverting the application of these well established rules of law to the negligent management of a boom or piers, goes further and contends that even though found negligent in permitting the logs to accumulate upon the piers, as claimed by the plaintiff, he should even then be excused from liability upon the ground that the rise of water which overflowed the plaintiff's land was due to vis major. The rule of law pertinent to the issue of vis major, while familiar, has been very recently stated in *Emilie Willson* v. *Boise City,* 20 Idaho, 133, 117 Pac., 115, 36 L. R. A., (N. S.) 1162. Suit was brought against the defendant city for flooding certain lands and collars, where the city insisted that it was not liable for damages, basing its contention upon the claim that the flood was unprecedented and unusual and therefore attributable to vis major, or act of God. Upon this contention the court say: "The decisive question, however, arises in this case as to what constitutes vis major, or the act of God, within the meaning of the law of negligence.

Black in his law dictionary defines it thus: 'Any misadventure or casualty is said to be caused by the act of God when it happens by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man, and without human intervention, and is of such a character that it could not have been prevented or escaped from by any amount of foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the party might reasonably require him to use.' "

In *Gulf Red Cedar Co.* v. *Walker,* 132 Ala., 553, 31 So., 374, the same court also say: "The term 'act of God' in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." In *Kansas City* v. *King,* 65 Kan., 64, 68 Pac., 1093, the court hold that an unusual flood but such as had occasionally occurred and of rare occurance in that vicinity, yet under the laws of nature might be anticipated to occur again, was not within the rule of vis major. In *Ohio & M. R. Co.* v. *Ramey,* 139 Ill., 9, 28 N. E., 1087, the same doctrine is declared, the court saying: "Though of rare occurrence, such rain-falls are not phenomenal, and therefore not beyond reasonable anticipation." It was here held that a cloudburst which had irregularly and infrequently occurred within the memory of man in a particular locality was not classed as vis major.

Upon the rules of law governing this case there seems to be no particular controversy between the plaintiff and the defendant. The defendant in his brief says: "The propositions of law which are applicable to the case at bar are: First, 'if an inevitable accident such as a flood which the defendant could not reasonably anticipate, caused the damage and the acts of the defendant in no way contributed to the injury, he would not be liable.' " That is, if the unusual flood and the defendant's negligence coöperated, the defendant would then be liable. Second, "that the method provided in the special act of 1897 provides for the compensation of the plaintiff for such damage as he would suffer from the reasonable and proper use of the rights granted." That is, for an unreasonable use it would be liable. Upon the application of these two

principles of law to the facts the rights of these parties are to be determined.

The first question accordingly is, did the defendant in allowing its logs to drift down and accumulate upon the piers, as the evidence tends to show they did, make a reasonable use of the privileges granted it by the Legislature. It is the opinion of the court that it did not. We cannot avoid the conclusion based upon fair inferences from the testimony, that the plaintiff has sustained the burden of showing that the defendant's logs, together with the drift-wood and other debris which would naturally flow down the river with the logs, accumulated and jammed upon the piers, until they filled the river from the very bottom to a height even with the top of the piers, which were two or three feet above high water mark. The uncontradicted testimony shows that from the bottom of the river this jam was 24 to 30 feet high, at the piers, and extended back about 40 rods. It also appears that this jam had been for a long time upon these piers, with no effort on the part of the defendant corporation to remove it, although Mr. West, who had driven the river nearly fifty years, says the logs "could be put down very easy." It should also be charged with the common knowledge that waste from the mills above, shingle butts, billets, shingle hair, saw-dust, bark and the natural debris of the stream, coming down against the jam and sifting into the interstices of the logs, would construct what was a comparatively tight dam across the river. Nor is any valid reason shown by the defendant why it was not entirely practicable for it to have run these logs through the large openings between these piers to the ample booming ground below. On the other hand, its manager admits that it was practicable, and that there was plenty of room. While ordinarily this condition occasioned no particular damage, as the water would perculate through this jam of logs sufficiently to prevent the formation of a pond above, we cannot believe that the defendant had a right, under the act of the Legislature, to allow this large accumulation of logs and debris to completely close this river for an indefinite time, so far as any act on its part seems to have been contemplated for its removal.

But the mere negligence of the defendant in allowing this accumulation, would not be sufficient to enable the plaintiff to maintain his action. It is incumbent upon him to show that the defendant, in connection with this jam of logs across the river, was charged with the duty of anticipating that such a rainfall, as had actually come and caused the damage complained of, might occur; and that in anticipation of such an event, it should have removed these logs to the extent, at least, of preventing the flood which occurred. Upon this phase of the case the defendant raised the question of vis major, or act of God, claiming that the rainfall was so unusual and unprecedented that the defendant was not required to anticipate it and that consequently the flood was vis major. But we are unable to see how defendant's contention, either that the flood was vis major, or if vis major, relieves the defendant.

The first proposition may be decided independently of the evidence by reference to that great fountain of all information—common knowledge. There is no claim in this case that there was a cloudburst, that this was a mountain stream, but simply that there was a heavy rain for three days in the month of September, 1909. There is scarcely a year when during some month in the year such a rain storm does not occur; and it will be observed that there was not an element contributory to this flood, as it is called, outside the water of a very heavy rain fall.

It is attempted, however, to show that this rise of water above the piers, was no higher than all along the river. But this contention is clearly negatived by the testimony of the plaintiff who says the river itself in front of his intervale rose from 12 to 15 feet "from the natural condition of the river before it started to rain." While at other places along the river defendant's witnesses say the water was at the ordinary freshet height, "somewhere in the neighborhood of four feet, a little strong, I should think," as stated by Mr. Churchill. We think that it requires no evidence to establish the conclusion that every man of mature age and common experience, must be held to anticipate that in this climate a rain storm for three or four days may occur in any month of the year. We think it can even be said that it is not unlikely to occur. Therefore, our conclusion is that the rainfall which overflowed the river

and flooded the plaintiff's intervale was not vis major. But even if it was vis major, it does not relieve the defendant. It already appears that the accumulation of logs upon the piers was negligence and beyond the protection of the legislative act. If, therefore, the rainfall was unprecedented, the defendant's negligence coöperated with it to produce the rise of water above the piers and the overflow of the plaintiff's land. Without the jam, it is evident that the flood would not have been so great and certainly could not have continued for any great length of time. This situation falls directly within the rule laid down in *Smith* v. *Western R. R. Co.,* 91 Ala., 445, 11 L. R. A., 619, supra, in which the court said: "While it is true that no human agency can prevent or stay an act of God, the act itself being that of omnipotence and irresistible, it is frequently the case that the results or natural consequences of an act of God, by the exercise of reasonable foresight and prudence, may be foreseen and guarded against. Where this can be done by the exercise of reasonable diligence and prudence, a failure to do so would be negligence, and subject the party upon whom this duty devolved to damages, although the original cause was an act of God." This rule was also declared in *Lake* v. *Milliken,* et als., 62 Maine, 240, in which the head-note fairly states the result of the opinion as follows: "Every wrong-doer is at least responsible for all the mischievous consequences that might be reasonably expected under the circumstances to result from his misconduct. Where an injury is the result of two concurring causes, the party responsible for one of these causes is not exempt from liability because the person who is responsible for the other cause may be equally culpable." Hence it could hardly be said that where the defendant's own negligence contributed that the consequences could be charged to the act of God.

At this point it is interesting to note that there is an apparent inconsistency in the decisions of the different courts in declaring, as was said in the Alabama case that although the original cause was an act of God, yet if it could be avoided with the exercise of reasonable diligence and prudence, a failure to do so would be negligence. But strictly speaking vis major or act of God is such an unprecedented and extraordinary operation of the forces of nature

that human providence is not required to anticipate its happening. Therefore, to say that vis major or act of God does not excuse, when negligence co-operates with it to produce injury, would seem to imply that human foresight should be held to anticipate the act of God. But in the practical application of these decisions, it will be seen that, although the operation of the forces of nature may be unprecedented, and in that sense the act of God, yet if they are not the proximate cause of the injury, but are aided in producing it by the negligence of human agency, then such agency is not excused.

In other words, the fury of the elements may be the act of God but its effect may be governed by the act of man.

Upon all of the evidence, it is the opinion of the court that the plaintiff has sustained the burden of showing that the defendant, in allowing its logs to accumulate and remain, as they did, upon the piers in 1909, was guilty of negligence.

The plaintiff also charges the defendant with negligence in allowing its logs to accumulate and remain upon the piers in the spring of 1910 when, on account of the freshet in June of that year, his meadow was again overflowed and his growing grass, oat and potato crop materially injured. It is also the conclusion of the court that in 1910 the defendant was guilty of negligence in allowing those logs to accumulate entirely across the river, and form a dam sufficient to cause the rise of water that produced the overflow upon the plaintiff's land. It appears from the evidence that it was entirely feasible for the defendant company to have run these logs down between these piers so as to have prevented the jam which completely filled the river. Nor was it permitted to let the logs so jam, by its legislative favor. While a mere violation of the act, would not enure to the benefit of the plaintiff in this case, it may properly be recalled to show that the defendant in accepting the legislative act regarded with approval the feasibility of keeping the channel clear, as required by the act.

Upon the question of damages alleged to have been sustained by the plaintiff in 1909, he declares upon an injury to the soil and grass then growing, upon which no evidence seems to have been offered, and upon damages to his potato crop, to the amount of $500.00. Upon this allegation evidence was offered tending to show dam-

ages to the amount of over $1200 for the market value of the potatoes in the field, and additional damages for labor, phosphate, etc.    Under the plaintiff's declaration it becomes unnecessary to discuss the question of amount inasmuch as the uncontradicted evidence sustains this claim of $500.00.    The plaintiff also alleges injury to his grass, oat crop and potato crop growing at the time of the freshet in 1910, and upon this we are inclined to take his figures upon the damages.    He claims that the loss upon his potato crop was $162.00 and upon his oat crop, $155.00, making a total of $317.00.    In accordance with the stipulation of the report, the entry must be,

> *Judgment for the plaintiff for $867.00 and interest from the date of the writ.*